In re HAMPTON HOTEL INVESTORS, L.P., Debtor.

Angela Tese–Milner, as Chapter 7 Trustee of Hampton Hotel Investors L.P., Plaintiff,

v.

Joel I. Beeler, East House L.L.C., East House Venture, East House Associates, L.L.C., Palm Garden Investors, L.P., Crankbrook Equities, William E. Murray, New Quogue Inn L.L.C., Lawrenceville Equities, Southampton Equities, American Securities Surveillance, Realty Center Associates, Greenbrook Equities, Brand Cayea & Brand, Defendants.

Bankruptcy No. 98–43032 (REG).
Adversary No. 02–2052.

United States Bankruptcy Court, S.D. New York.

Feb. 28, 2003.

**566**

Law Offices of Angela Tese–Milner, by Angela Tese–Milner, Michael Milner, New York City, for Chapter 7 Trustee.

Brand, Cayea & Brand, L.L.C., by Donald J. Cayea, Darren T. Kaplan, New York City, Defendants Pro Se.

New Quogue Inn L.L.C., East House L.L.C., East House Venture and East House Associates L.L.C., by Peter Marc Stern, New York City, for William E. Murray.

DECISION AND ORDER ON MOTIONS (1) TO DISMISS CLAIMS AGAINST BRAND CAYEA DEFENDANTS, AND (2) TO DISQUALIFY THE BRAND CAYEA DEFENDANTS FROM REPRESENTATION OF BEELER DEFENDANTS

ROBERT E. GERBER, Bankruptcy Judge.

### Introduction

This adversary proceeding, under the umbrella of the chapter 7 case of debtor Hampton Hotel Investors, L.P. ("Debtor"),[1] was brought by Angela Tese–Milner, the chapter 7 trustee of the Debtor's estate (the "Trustee"), against:

(a) the Debtor's general partner, Joel I. Beeler ("Beeler"), for failure to satisfy the debts of the Debtor (a limited partnership) and for alleged wrongful conduct in connection with the conduct of the Debtor's chapter 11 case prior to conversion to chapter 7;

(b) entities under Beeler's control ("Beeler Entities," and together with Beeler, the "Beeler Defendants"), who are charged with transferee liability with respect to property of the estate that was allegedly transferred out of the Debtor, and/or participation in the alleged wrongful conduct;

(c) William E. Murray ("Murray"); East House LLC, East House Venture, and East House Associates, L.L.C. (the "East House Defendants", and together with Murray, the "Murray Defendants"), who likewise are charged with transfer-

---

1. As described more fully below, the Debtor had originally filed under chapter 11 of the Bankruptcy Code, but its case thereafter was converted to one under chapter 7 pursuant to this Court's decision of November 14, 2001. *See In re Hampton Hotel Investors L.P.,* 270 B.R. 346 (Bankr.S.D.N.Y.2001) (the *"Conversion Decision"*).

ee liability with respect to property of the estate that was transferred out of the Debtor, and/or participation in the alleged wrongful conduct;

(d) the law firm of Brand, Cayea & Brand, LLC ("Brand Cayea")and Donald J. Cayea, Esq. ("Mr. Cayea", and together with Brand Cayea, the "Brand Cayea Defendants"), counsel for the Debtor during the time it was in chapter 11, with respect to whom the claims are discussed at length below.

The Court now has before it two motions. In the first-filed motion (the "Disqualification Motion"), the Trustee moves to disqualify the Brand Cayea Defendants from representing the Beeler Defendants. In the second-filed motion (the "Dismissal Motion"), the Brand Cayea Defendants move to dismiss, in its entirety, the adversary proceeding as against them, under Fed.R.Civ.P. 12(b)(6) for failure to state a claim for which relief can be granted (principally by reason of argued lack of standing), and under Fed.R.Civ.P. 9(b), for failure to specify alleged fraud with particularity.

### A.

The Dismissal Motion, which logically should be addressed first, raises issues as

to the applicability of the *"Wagoner* Rule" in this Circuit, *see Shearson Lehman Hutton, Inc. v. Wagoner,* 944 F.2d 114 (2d Cir.1991) (*"Wagoner"*), and *Wagoner's* progeny.[2] As described more extensively below, the *Wagoner* Rule generally provides that a bankruptcy trustee steps into the shoes of the debtor, with the ability to assert claims to the extent (but only the extent) the debtor could, and that (subject to an exception that may be applicable here) misconduct by a debtor's personnel is imputed to the trustee; when that is the case, a trustee lacks standing to assert claims on behalf of the estate against a third party. The exception, known as the "Adverse Interest Exception," applies in situations in which the debtor's personnel acted solely to advance their own interests, and not the interests of the debtor.

Upon parsing the complaint and applying the *Wagoner* Rule and its Adverse Interest Exception, the Court determines that one of the four causes of action asserted by the Trustee against the Brand Cayea Defendants[3] plainly belongs to the Trustee, under the Bankruptcy Code and applicable federal law, and that the *Wagoner* Rule does not even arguably apply to it. With respect to another,[4] the *Wagoner*

**2.** *See Hirsch v. Arthur Andersen & Co.,* 72 F.3d 1085 (2d Cir.1995) (*"Hirsch"*), *aff'g Hirsch. v. Arthur Andersen & Co.,* 178 B.R. 40 (D.Conn. 1994) (Cabranes, J.) (*"Hirsch–District"*); *Mediators, Inc. v. Manney (In re Mediators, Inc.),* 105 F.3d 822 (2d Cir.1997) (*"Mediators"*); *Wight v. Bankamerica Corp.,* 219 F.3d 79 (2d Cir.2000) (*"Wight"*); *In re Wedtech Securities Litigation,* 138 B.R. 5, 8 (S.D.N.Y.1992) (Sand, J.) (*"Wedtech"*); *Wechsler v. Squadron, Ellenoff, Plesent & Sheinfeld LLP,* 212 B.R. 34 (S.D.N.Y.1997) (Knapp, D.J., and Peck, M.J.), *related subsequent proceeding reported at* 994 F.Supp. 202 (1998) (*"Wechsler"*); *Breeden v. Kirkpatrick & Lockhart, LLP,* 268 B.R. 704 (S.D.N.Y.2001) (Sprizzo, J.) (*"Breeden"*); *Goldin v. Primavera Familienstiftung, TAG Associates, Ltd. (In re Granite Partners),* 194 B.R. 318 (Bankr.S.D.N.Y.1996) (Bernstein, J.)

(*"Granite Partners I"*); *Giddens v. D.H. Blair & Co. (In re A.R. Baron & Co.),* 280 B.R. 794 (Bankr.S.D.N.Y.2002) (Beatty, J.) (*"A.R.Baron"*).

**3.** Viz, the Fifth Cause of Action, seeking recovery of legal fees paid to Brand Cayea, after the filing of the Debtor's chapter 11 case, without Court authorization.

**4.** Viz, the Second Cause of Action, asserting claims against the Brand Cayea Defendants for fraud, and/or aiding and abetting fraud, based on Beeler's entry into a secret agreement, discussed below, in which Murray would bid on the principal asset of the Debtor's estate, and after which Beeler would take an interest in the acquiring entity.

Rule at least initially applies, but the Adverse Interest Exception may also apply, and thus that cause of action cannot be dismissed on motion. With respect to the remaining two causes of action,[5] the Court determines that while the *Wagoner* Rule initially applies, the Adverse Interest Exception may also apply, and thus those causes of action cannot be dismissed on motion by reason of the *Wagoner* Rule. However, other pleading deficiencies require their dismissal at this time, with leave to replead. The motion to dismiss is thus granted in part, and denied in part, for the reasons set forth above and below.

## B.

The disqualification motion is granted. As the Brand Cayea Defendants will be continuing in this litigation as defendants, at least in material respects, the Brand Cayea Defendants will have conflicting loyalties when deciding whether or not to point the finger at Beeler. In addition, it is highly likely, if not certain, that Brand Cayea partners will be fact witnesses in connection with this litigation.

They cannot act as attorneys for the Beeler Defendants under these circumstances.

### *Background*

The Debtor is a limited partnership that, until a point in its chapter 11 case, operated an "18 key country inn" (the "Inn") in Quogue, in the "Hamptons" area of Long Island, New York. It filed a chapter 11 case in this district on April 28, 1998, and continued in chapter 11, even after a sale of the Inn, until November 2001. At that time, for reasons set forth at length in the *Conversion Decision*, see 270 B.R. at 349–357, the Court granted a motion by the United States Trustee (the "UST") to con-

vert this case to chapter 7. The Court then stated, early in its discussion:

> The motion establishes an overwhelming case for conversion, and raises only one issue worthy of significant discussion, raised by the Debtor's general partner [Beeler], through whom the Debtor acted during the pendency of this chapter 11 case—the extent to which provisions in the Debtor's Limited Partnership Agreement ("Partnership Agreement"), under which the limited partners authorize various kinds of self-dealing by their general partner, authorize or excuse conduct that would otherwise be unthinkable in a bankruptcy case.

*Id.* at 349.

Among many other things, the Court found in the *Conversion Decision* that during the course of the chapter 11 case, Beeler and Murray had entered into a secret agreement (the "Secret Agreement") under which Murray would bid for the Inn, and if (as turned out to be the case), Murray's bid was successful, Beeler would take a personal interest in the Inn after the Inn was transferred to Murray. In determining that the Debtor's case should be converted, the Court found, as urged by the UST:

(a) Payments to the Brand Cayea Defendants of legal fees without Court authorization, or, indeed, application therefor, *id.* at 352;

(b) Unauthorized post-petition payments to the Debtor's general partner Beeler, *id.* at 352–353;

(c) Borrowing without Court approval, *id.* at 353;

(d) Unauthorized payment of prepetition debt, *id.;*

---

**5.** Viz, the Third and Fourth Causes of Action, for alleged breaches of fiduciary duty, and negligence and malpractice, respectively.

(e) Failures to collect receivables from the general partner Beeler's affiliate (the entity in which Beeler had taken an interest with Murray), *id.;*

(f) Failure by Beeler, as general partner, to meet a general partner's obligations to creditors, and, indeed, resistance to efforts by the UST to ascertain his net worth, *id.* at 354; and, of course

(g) Beeler's agreement with Murray for bidding on estate assets. *Id.* at 354–355.

At the conclusion of its factual findings in the *Conversion Decision,* this Court stated, *inter alia:*

> The case was managed, in numerous material respects, with a total disregard for the duties of a debtor in possession in a case under the Bankruptcy Code. The Debtor has been managed, in numerous material respects, as if it were not in bankruptcy at all.
>
> The Debtor's general partner, Beeler, through whom the Debtor has acted during the pendency of this chapter 11 case, acted knowingly and consciously in connection with the acts described above.[6]
>
> The foregoing conduct on the part of a debtor in possession in a case under chapter 11 of the Bankruptcy Code, or an individual acting on a chapter 11 debtor in possession's behalf, is unthinkable, and results in a series of classic violations of the fiduciary duties of an individual managing the affairs of a debtor in possession.

*Id.* at 357. The Court's order converting the case was not appealed.

After the UST's motion was granted and the case was converted to one under chapter 7, the UST promptly appointed a chapter 7 trustee, and the Trustee was appointed the following day. The Trustee commenced this adversary proceeding against the above-named defendants with the filing of a complaint (the "Initial Complaint)" on January 27, 2002. The Trustee thereafter amended her complaint; the allegations of the complaint as amended ("Amended Complaint") are discussed below.

Shortly after service of the Initial Complaint, Brand Cayea sought to appear on its own behalf and on behalf of the other Brand Cayea Defendants, and also on behalf of the Beeler Defendants. The Trustee objected. Even before the service of the Amended Complaint, the Trustee moved to disqualify Brand Cayea from service as counsel for the Beeler Defendants.

Then, the Brand Cayea Defendants moved, under Fed.R.Civ.P. 12(b)(6), as made applicable to adversary proceedings by Fed. R. Bankr.P. 7012(b), to dismiss the Initial Complaint, as it was asserted against the Brand Cayea Defendants, for failure to state a claim upon which relief can be granted (principally for argued lack of standing on the part of the Trustee to bring a claim of this nature), and based on Fed.R.Civ.P. 9(b), as made applicable by Fed. R. Bankr.P. 7009, for failure to plead fraud with particularity. The Brand Cayea Defendants updated the Dismissal Motion after service of the Amended Complaint.

6. In a footnote at this point, the Court stated: In his testimony at the evidentiary hearing, Beeler repeatedly blamed others for his conduct, expressly or impliedly to disclaim personal responsibility for anything he did. The Court does not find such assertions either credible or persuasive. In the Court's view, Beeler, a lawyer, cannot pass off responsibility for his own conduct and his own knowing acts, and whatever fault may be found on the part of his professionals, such pales in comparison to his own. 270 B.R. at 357 n. 29.

*The Amended Complaint*

The Amended Complaint (hereafter, "Complaint") starts with background allegations and follows with allegations as to facts that the Court had found in connection with the *Conversion Decision.*[7] After 33 paragraphs of such, the Complaint then sets forth 14 individual causes of action—four of which, so far as the Court can discern[8] (the Second, Third, Fourth and Fifth causes of action), are asserted against the Brand Cayea Defendants.

*Second Cause of Action*

The Second Cause of Action, asserted against Beeler and the Brand Cayea Defendants, charges Beeler and the Brand Cayea Defendants with having "breached their fiduciary obligations to the Estate and its creditors by engaging in the acts and conduct set forth hereinabove."[9] Allegations with respect to the Brand Cayea Defendants "hereinabove," however, on the whole speak of Beeler's conduct and the conduct of the chapter 11 case, with express or implied allegations that the Brand Cayea Defendants were aware of such matters and counseled them. Other than identifying the Brand Cayea Defendants as the Debtor's counsel in the chapter 11 case,[10] allegations "hereinabove" with respect to the Brand Cayea Defendants are as follows:

The sale [of the Inn] was held on December 10, 1998 (the "Judicial Sale"). Prior to the Judicial Sale, the only advertisement of the Judicial Sale appeared on one occasion in Newsweek [*sic.;* the Court believes this probably should be "Newsday"]. Neither Beeler nor Brand Cayea and Donald J. Cayea cause [*sic.*] brokers to be retained nor were auctioneers retained to advertise and conduct the Judicial Sale.

(Cmplt.¶ 24);

Defendants [*sic.*] Beeler, on behalf of the Debtor, during the pendency of the Chapter 11 Case and with the knowledge and counsel of Defendants Brand Cayea and Donald J. Cayea, Esq., as attorneys for the Debtor:, and without informing the Court or the Office of the United States Trustee:

a) retained and compensated professionals without required approval and authorization of the Court and the Office of the United States Trustee;
b) failed to commence actions before the Bankruptcy Court for the turnover of property of the Estate and to prevent the waste of corporate assets;
c) borrowed money without the required approval and authorization of the Bankruptcy Court and in violation of Bankruptcy Code Section 364 in order to repay loans Beeler or the Alter Ego Entities had allegedly advanced to the Debtor (or on Debtor's behalf), totaling approximately $115,000.00;
d) paid pre-petition debts, including a payment (in the approximate amount of $1,466) made to an entity called Barter Advantage, Inc., which was not listed in the Debtor's Schedules and

---

**7.** The allegations generally track the findings of fact in the *Conversion Decision,* with which familiarity now is presumed. In the interests of brevity, they will not be repeated here, except as relevant to the motions now before the Court.

**8.** The Court articulates it in this way because the particular defendants against whom each cause of action is asserted are not identified

as such, nor are they so identified in the Complaint's concluding "Wherefore" allegations, and each Cause of Action begins by incorporating all of the earlier allegations in the Complaint preceding it.

**9.** Cmplt. ¶ 39.

**10.** Cmplt. ¶ 12.

Statements as the source of any asset, in September 2000, on account of a pre-petition debt, without obtaining (or seeking) required authorization and approval; and

e) failed to collect or attempt to collect receivables from Defendant Beeler and Alter Ego Entities, including East House and/or EHV.

f) failed to pursue Defendant Beeler for his liability as General Partner for all of the Debtor's debts; and

g) permitted the operators of a restaurant located on the Debtor's property to use the restaurant without payment of proper rents to the Debtor and failed to commence an action pursuant to 11 U.S.C. § 541 *et seq.* for the turnover of rents due to the Debtor.

(Cmplt.¶ 29).

Without informing the Court, defendants Beeler and Murray, with the knowledge of and/or the assistance of Brand Cayea and Donald J. Cayea, Esq.[11], entered into the collusive Secret Agreement . . .

(Cmplt. ¶ 30).

While incorporating many allegations, as quoted above, the Second Cause of Action seems to focus on the Secret Agreement, and the failure to disclose it.[12] It concludes:

As a result of the breach of their fiduciary duty and failure to disclose material facts, damages, including punitive damages should be assessed against Beeler, Brand Cayea and Donald J. Cayea, Esq.

(Cmplt.¶ 43).

*Third Cause of Action*

The Third Cause of Action, which appears to be asserted solely against the Brand Cayea Defendants, incorporates all prior allegations, and asserts as its essence that the Brand Cayea Defendants "breached their fiduciary duty to the Debtor by committing the acts complained of herein." (Cmplt.¶ 45). It goes on to allege that the "acts complained of":

constitute "reckless indifference to the Bankruptcy Code, Local Rules of the Bankruptcy Court, Disciplinary Rules and the stated terms of Brand Cayea's retention and/or gross negligence."

(Cmplt.¶ 47)[13] They are said to justify the imposition of punitive damages. (*Id.* ¶ 48).

*Fourth Cause of Action*

The Fourth Cause of Action is, in essence, a malpractice claim. After once more realleging all of the allegations before it, the Fourth Cause of Action alleges that the Brand Cayea Defendants "failed to represent the Debtor competently or to render sound legal advice" (Cmplt.¶ 50),

---

**11.** The Court is aware that the Brand Cayea Defendants dispute that they had knowledge of the Secret Agreement and that they provided any assistance with respect to it, and that an affidavit submitted by Beeler asserted that they were not participants. However, for the purposes of a motion of this character, the allegations in the Complaint must be taken as true. If it turns out that the Trustee made these allegations without the requisite basis, the Brand Cayea Defendants may hereafter seek Rule 11 or other appropriate relief.

**12.** *See* Cmplt. ¶ 40 ("[t]he contents of the Secret Agreement were material to the Judicial

Sale"), ¶ 41 ("[a]s fiduciaries of the Estate, Beeler, Brand Cayea and Donald J. Cayea, Esq. had a duty to inform the Court, creditors and interested parties of the terms of the Secret Agreement in advance of the Judicial Sale"), ¶ 42 ("[a]s a result of the failure to disclose the terms of the Secret Agreement, the Judicial Sale was tainted and the public interest breached. . . .").

**13.** The specific provisions of the Code, Local Rules, Disciplinary Rules and terms of Brand Cayea's retention were not set forth.

and "were negligent in their representation of the Debtor." (*Id.* ¶ 51).

*Fifth Cause of Action*

After once more incorporating by reference everything ahead of it, the Fifth Cause of Action focuses on Brand Cayea's receipt of legal fees without application to the Bankruptcy Court or authorization by the Bankruptcy Court of the payment of such fees. While the Fifth Cause of Action does not cite any particular provisions of the Code underlying the claim for relief, it alleges:

> 54. Defendants [*sic.*] Brand Cayea and Brand received unauthorized fee payments during the pendency of the Chapter 11 case without ever filing a fee application or obtaining an order authorizing payment of fees.

> 55. These unauthorized fee payments must be disgorged and Brand Cayea's fees should be disallowed in their entirety.

(Cmplt.¶¶ 54, 55).

*Discussion*

*I*

*A.*

*Standards for Determination of Motions to Dismiss*

The standards for a motion to dismiss are well established. In reviewing a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), made applicable to an adversary proceeding in a bankruptcy proceeding under Fed. R. Bankr.P. 7012(b), a court accepts as true the well-pleaded factual allegations made by the plaintiff/claimant, and the court "must draw all reasonable inferences in favor of the plaintiff." *Bernheim v. Litt,* 79 F.3d 318, 321 (2d Cir.1996) (citing to *Hernandez v. Coughlin,* 18 F.3d 133, 136 (2d Cir.), *cert. denied,* 513 U.S. 836, 115 S.Ct. 117, 130 L.Ed.2d 63 (1994)); *see Villager Pond Inc. v. Town of Darien,* 56 F.3d 375, 378 (2d Cir.1995) ("[I]n passing on a motion to dismiss, . . . the allegations of the complaint should be construed favorably to the pleader" (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 235–236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974))); *A.R. Baron,* 280 B.R. at 799.

It has long been the law that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *accord Northrop v. Hoffman of Simsbury, Inc.,* 134 F.3d 41, 44 (2d Cir. 1997) (quoting *Conley* ); *In re Granite Partners, L.P.,* 210 B.R. 508, 514 (Bankr. S.D.N.Y.1997) (Bernstein, C.J.) (*"Granite Partners II"* ) (denying motion to dismiss complaint, noting dismissal would be proper "only when the plaintiff would not be entitled to any type of relief, even if it prevailed on the merits of its factual allegations").

As the Supreme Court held in *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974):

> When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test.

416 U.S. at 236, 94 S.Ct. at 1686.

Nevertheless, dismissal can and should be granted if the plaintiff's allegations, taken as true, along with any inferences that flow from them, are insufficient as a matter of law. *See, e.g., Sykes v. James,*

13 F.3d 515, 519 (2d Cir.1993), *cert. denied,* 512 U.S. 1240, 114 S.Ct. 2749, 129 L.Ed.2d 867 (1994) (applying the standard discussed above but nevertheless dismissing, where claims for relief were legally insufficient); *In re 80 Nassau Assocs.,* 169 B.R. 832, 841 (Bankr.S.D.N.Y.1994) (Bernstein, C.J.) (applying this standard and granting motion to dismiss, with leave to amend, where allegations did not support claim of equitable subordination).

### B.

#### The Wagoner Rule

The Brand Cayea Defendants' principal point in the Dismissal Motion is that under the *Wagoner* Rule, and the cases applying it, the Trustee lacks standing to assert any of the four causes of action that are asserted against the Brand Cayea Defendants.[14]

 As the starting point for the discussion, the Court notes, as did Judge Beatty of this Court in explaining the

*Wagoner* Rule, that as a general matter, a bankruptcy trustee stands in the shoes of the debtor, and has standing to bring any suit that the debtor could have instituted had the debtor not filed a petition under the Bankruptcy Code. *See A.R. Baron,* 280 B.R. at 800, citing *Wagoner,* 944 F.2d at 118.[15] It has repeatedly been stated that state law determines whether a right to sue belongs to the debtor or to individual creditors; *see, e.g., Hirsch,* 72 F.3d at 1093; *Mediators,* 105 F.3d at 825–826; *Wight,* 219 F.3d at 86; the Court respectfully suggests that it might be more precise and consistent with the principles underlying those statements to say that "applicable law"—*i.e.,* the law underlying the property interest or cause of action being asserted (which is usually, but not always, state law, and can sometimes be federal law)—determines whether the claims are property of the estate under section 541, or otherwise can be asserted by a bankruptcy trustee.[16]

---

**14.** The matter of standing to bring a cause of action is a jurisdictional issue, derived from the "case or controversy" requirement, under Article III, § 2 of the United States Constitution, and is therefore a threshold issue in all cases seeking to be heard in federal court. *See Wight,* 219 F.3d at 86; *Wagoner,* 944 F.2d at 117. To meet constitutional requirements, a party must have a "personal stake in the outcome of the controversy." *Wagoner,* 944 F.2d at 118. Accordingly, a party must base his claim on "his own legal rights and interests, and cannot rest his claim for relief on the legal rights or interests of third parties." *Id.* In short, to have standing, the " 'plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief.' " [internal numbering omitted] *Hirsch,* 72 F.3d at 1091 quoting *Allen v. Wright,* 468 U.S. 737, 757, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984).

**15.** *See also* Bankruptcy Code section 323(b), which vests a trustee in bankruptcy with the capacity to sue and be sued in behalf of the bankruptcy estate, and section 704(1) directs

such a trustee to "collect and reduce to money the property of the estate for which such trustee serves." *See Hirsch,* 72 F.3d at 1090 n. 5.

**16.** *See* 5 Alan N. Resnick and Henry J. Sommer, *Collier on Bankruptcy* ¶ 541.08[6], at page 541–51 (15th Ed. Rev.2002) ("where *applicable law* makes ... obligations or liabilities run to the corporate creditors personally, rather than to the corporation, such rights of action are not assets of the estate under section 541(a) that are enforceable by the trustee") (emphasis added); *In re Ames Department Stores, Inc.,* 287 B.R. 112, 122–123 & nn. 20, 21 (Bankr.S.D.N.Y.2002) ("The Objecting Lessors properly agree that what is property in bankruptcy cases is governed by applicable non-bankruptcy law—usually state law, but sometimes federal law"); *In re Magnesium Corp. of America,* 278 B.R. 698, 705 (Bankr.S.D.N.Y.2002) ("It is true, at least in this Circuit, that federally created rights can be property of the estate, which can be protected under the automatic stay"), citing *The Official Committee of Unsecured Creditors v. PSS Steamship Company, Inc. (In re Pruden-*

From that emerges the *Wagoner* Rule. The *Wagoner* Rule starts with the recognition that a trustee can assert claims to the extent, but only the extent, that they belong to the estate and not to others (e.g., creditors, investors or depositors); thus the trustee lacks standing to assert claims that belong to creditors and not the estate. *See Wagoner,* 944 F.2d at 118 ("[i]t is well settled that a bankruptcy trustee has no standing generally to sue third parties on behalf of the estate's creditors, but may only assert claims held by the bankrupt corporation itself"), citing *Caplin,* 406 U.S. at 434, 92 S.Ct. 1678. *See also Hirsch,* 72 F.3d at 1093 ("[W]hen creditors have . . . a claim for injury that is particularized as to them, they are exclusively entitled to pursue that claim, and the bankruptcy trustee is precluded from doing so.").[17] Judge Cabranes, then on the district court, put it succinctly in his earlier decision in *Hirsch–District*: "A trustee has standing to sue third parties only if the debtor itself was damaged by the conduct of the third parties." *Hirsch–District,* 178 B.R. at 43.

The *Wagoner* Rule then goes on to require that a further inquiry be made—"to determine whether the debtor was complicit in the wrongdoing allegedly perpetuated by a third-party defendant." *See A.R. Baron,* 280 B.R. at 800. If such misconduct is imputed to the debtor, the injury is deemed to be suffered by the debtor's creditors rather than the debtor itself, thereby precluding a trustee from pursuing such a claim on behalf of the debtor. *Id.* Putting it another way, debtor misconduct is imputed to the trustee, and as a consequence, the cause of action is deemed to "belong to the creditors *qua* creditors," *see Mediators,* 105 F.3d at 826, and not to the estate or the trustee, even though the trustee is seeking the recovery on behalf of creditors.[18] The ruling in *Wagoner* was summarized in *Wight,* the most recent of the four Second Circuit decisions in this area, as holding that, under governing New York law, "[a] claim against a third party for defrauding a corporation with the cooperation of management accrues to creditors, not to the guilty corporation" *Wight,* 219 F.3d at 86.

*tial Lines, Inc.),* 928 F.2d 565, 568 (2d Cir. 1991); *The Official Committee of Unsecured Creditors v. PSS Steamship Company, Inc. (In re Prudential Lines, Inc.),* 107 B.R. 832, 841–843 (Bankr.S.D.N.Y.1989) (Buschman, J.). *See also Caplin v. Marine Midland Grace Trust Co.,* 406 U.S. 416, 434, 92 S.Ct. 1678, 32 L.Ed.2d 195 (1972) (*"Caplin"*) (observing that, although a Chapter X trustee lacked standing to assert claims against an indenture trustee that belonged to debenture holders, Congress could, if it wished, confer the necessary standing on the Chapter X trustee).

The distinction, although not material in any of *Hirsch, Mediators, or Wight,* is significant here, as one of the causes of action asserted by the Trustee here is expressly conferred on her under applicable federal law.

**17.** The Supreme Court's decision in *Caplin,* upon which the Second Circuit relied in *Wagoner,* is a good example of this. There the

Supreme Court declined to allow the trustee of a debtor in a proceeding under Chapter X of the former Act to assert causes of action against an indenture trustee (for failures to meet obligations under the indenture and violations of the Trust Indenture Act of 1939) that belonged to the debenture holders for whom the indenture trustee served. *See* 406 U.S. at 434, 92 S.Ct. 1678.

**18.** Another, arguably more descriptive, means of describing the *Wagoner* Rule's application in cases where the estate (and hence the trustee) has been injured, but where the trustee cannot sue because the wrongful conduct of the debtor's personnel is imputed to the trustee, is *"in pari delicto."* *See Granite Partners I,* 194 B.R. at 328–331 (considering application of *Wagoner* Rule in those terms). Because *"in pari delicto"* so well captures the nature of the deficiency that triggers the application of the *Wagoner* Rule, this Court will use that expression from time to time.

As the Second Circuit continued in *Wight:*

> The rationale underlying the *Wagoner* rule derives from the fundamental principle of agency that the misconduct of managers within the scope of their employment will normally be imputed to the corporation.... Because management's misconduct is imputed to the corporation, and because a trustee stands in the shoes of the corporation, the *Wagoner* rule bars a trustee from suing to recover for a wrong that he himself essentially took part in.

*Id.* at 86–87.

The *Wagoner* Rule has been applied to dismiss, for lack of standing, claims that had been asserted:

(a) By a trustee against the debtor's broker, for aiding and abetting unlawful investment activity of the debtor's president and sole stockholder and director, where the debtor's president had solicited loans from others, issuing notes to them, and used the proceeds to make engage in speculative trading that dissipated corporate funds; *see Wagoner,* 944 F.2d at 119–120;

(b) By a trustee against the debtor's accounting firm, for malpractice in connection with the debtor's Ponzi scheme, including both distributing misleading offering memoranda and providing deficient professional services; *see Hirsch,* 72 F.3d at 1092, 1094 (applying Connecticut law);

(c) By a creditors committee, on behalf of a chapter 11 debtor, against a bank that had financed a transaction and the lawyers and accountants that facilitated it, for aiding and abetting a debtor's president and sole shareholder in the breach of his fiduciary duties, by diverting assets; *see Mediators,* 105 F.3d at 826;

(d) By the liquidators of an overseas bank against a correspondent bank, for aiding and abetting the overseas bank's insiders' breach of fiduciary duty and in defrauding of bank depositors; *see Wight,* 219 F.3d at 82;

(e) By the trustee against the debtor's counsel and accountants, for their alleged malpractice, breach of fiduciary duty and negligence in failing to report, to debtor's innocent directors and officers, their suspicions that management was using debtor to perpetrate a Ponzi scheme; *see Breeden,* 268 B.R. at 709 ("[a] bankruptcy trustee lacks standing under New York law to seek recovery on behalf of a debtor company against third-parties for injuries incurred by the misconduct of the debtor's controlling managers");

(f) by the trustee against brokers for aiding and abetting, or participation with, insiders in connection with the insiders' acts of waste, mismanagement, and breach of fiduciary duty; *see Granite Partners I,* 194 B.R. at 339;

(g) By the trustee for a defunct brokerage house in a SIPA proceeding in the bankruptcy court, against another brokerage house and others, for participation in a scheme to artificially inflate the price of stock and defraud the brokerage house's customers. *See A.R. Baron,* 280 B.R. at 803.[19]

As is apparent from the foregoing, the *Wagoner* Rule—i.e., the doctrine of *in pari delicto*—has been applied to deny the trustee standing both in cases where the

---

**19.** One other case, involving a suit by a bankruptcy trustee against the debtor's former counsel, for malpractice allegedly facilitating the debtor's defrauding of others, would have been dismissed but for application of an exception to the *Wagoner* rule, discussed below. *See Wechsler,* 994 F.Supp. at 205.

gravamen of the wrongful action was injury to creditors, depositors, or the public at large (and the injury to the debtor was only incidental),[20] and in cases where the debtor was also a victim [21] but where the debtor's management had been a participant in wrongful activity.[22]

■ As previously noted, however, there is an exception to the *Wagoner* Rule, known as the "Adverse Interest Exception," *see Wight*, 219 F.3d at 87; *Mediators*, 105 F.3d at 827; *A.R. Baron*, 280 B.R. at 801, which rebuts the usual presumption that the acts and knowledge of an agent acting within the scope of employment are imputed to the principal. *See Wight*, 219 F.3d at 87. Under that exception, management misconduct will not be imputed to the corporation if the officer acted entirely in his own interests and adversely to the interests of the corporation. *Id.* The theory is that "where an agent, though ostensibly acting in the business of the principal, is really committing a fraud for his own benefit, he is acting outside of the scope of his agency, and it would therefore be most unjust to charge the principal with knowledge of it." *Id.*

### C.

### *Application of Wagoner Rule to Trustee's Claims Here*

■ As Judge Bernstein noted in *Granite Partners I*, "[t]o determine standing, the court must look to the nature of the wrongs alleged in the complaint without regard to the plaintiff's designation ... and the nature of the injury for which relief is sought." 194 B.R. at 325 (citations omitted). Application of the *Wagoner* Rule to the four causes of action asserted by the Trustee yields different results, depending on the nature of the claims asserted. They are discussed in turn.

### *1. Second Cause of Action*

■ Reading the Complaint with the deference that *Conley v. Gibson* requires, the essence of the Second Cause of Action (insofar as it is not duplicative of the Third Cause of Action and is asserted against the Brand Cayea Defendants) is that Cayea

20. *See Hirsch, Breeden, A.R. Baron. Cf. Wechsler*, which considered the *Wagoner* Rule, but then concluded that an exception to it, discussed below, applied.

21. *See* Wagoner, *Mediators, Granite Partners I.* In *Wight*, depositors probably were the principal victims, but there was also a breach of fiduciary duty claim, with respect to which the debtor itself would also be a victim, and wrongful management activity was a major factor in connection with both kinds of claims. *Wight* teaches us that where injuries of both types appear, the participation of management, which deprives the trustee of standing, at least initially requires application of the *Wagoner* Rule.

22. To apply the *Wagoner* Rule at all, it is, of course, necessary to satisfy its requirement that the third party's alleged wrongful conduct be with the "cooperation of management." *See A.R. Baron*, 280 B.R. at 800. Here that is not an issue. At all relevant times, Beeler was the sole general partner of the Debtor. There was no other decision maker in power or in a position to stop his activities. In *Hirsch*, the Second Circuit found the *Wagoner* Rule to apply—and thus preclude the trustee's malpractice claims—where both of the debtor's general partners collaborated with third-party defendants in the wrongdoing that formed the basis for the trustee's complaint. *See* 72 F.3d at 1094. In *Wechsler*, the *Wagoner* Rule was extended to apply "where all relevant shareholders and decisionmakers were engaged in the fraud." *See* 212 B.R. at 36. As Judge Beatty noted in *A.R. Baron*, under the interpretation of the *Wagoner* Rule in *Wechsler*, unless a complaint alleges the existence of an innocent decision maker who could have prevented the fraud, the wrongdoing will be imputed to the corporation. *See A.R. Baron*, 280 B.R. at 801; *Wechsler*, 212 B.R. at 36.

knew of the Secret Agreement (and, impliedly, at least, Beeler's breaches of fiduciary duty in entering into it) [23] and failed to reveal it or report Beeler for having entered into it. That is expressly alleged to be a breach of fiduciary duty on the part of the Brand Cayea Defendants, or impliedly an aiding and abetting of Beeler's breach of fiduciary duty,[24] or both.[25] Significantly for the purposes of the motion, however, the Second Cause of Action does not allege that the Brand Cayea Defendants were guilty of having themselves entered into the Secret Agreement, or benefited from the Secret Agreement in any way; the essence of the claim is a failure to have "blown the whistle."

The claim that the Brand Cayea Defendants knew of Beeler's wrongful conduct and assisted in Beeler's breach of his fiduciary duties (or facilitated them) squarely invokes the *Wagoner* Rule,[26] but it also invokes, or may invoke, the adverse interest exception. The Court has some considerable uncertainty as to how it could be

argued that entering into the Secret Agreement was in the interests of the Debtor in any way (and certainly the Trustee has not alleged such, or alleged facts from which such an inference could be drawn), and in any event, construing the complaint now to foreclose such an argument would run afoul of *Conley v. Gibson*. At least at the pleading stage, the Trustee is entitled to the inference that Beeler acted solely for his own benefit. *See Wight*, 219 F.3d at 87 ("[f]or purposes of [the defendant] SPIB's Rule 12 motion, the district court correctly 'construe[d] the complaint in favor' of the Liquidators and credited their adverse interest allegation as true"). *See also In re Wedtech Securities Litigation*, 138 B.R. 5, 8 (S.D.N.Y.1992) (Sand, J.) (denying summary judgment under the *Wagoner* Rule in a malpractice action brought by a chapter 11 trustee against the debtor's accountants, where there was an issue of fact remaining as to whether the guilt of the corporate officers could be imputed to the corporation).

---

**23.** The *Wagoner* Rule only deals with claims against third parties. It does not proscribe actions against insiders for breach of fiduciary duty, which are properly claims of the trustee. As the Second Circuit held in *Mediators*:

> We agree that a bankruptcy trustee, suing on behalf of a debtor under New York law, may pursue an action for breach of fiduciary duty against the debtor's fiduciaries. *See, e.g. In re Keene Corporation*, 164 B.R. 844, 853 (Bankr.S.D.N.Y.1994) ("Section 720 of New York's Business Corporation law expressly authorizes a corporation or bankruptcy trustee to sue the corporation's officers and directors for breach of fiduciary duty, including misappropriation or diversion of assets"). None of these cases, however, allows a trustee to pursue aiding and abetting claims against third parties.

105 F.3d at 826–827. Likewise, as Judge Bernstein noted in *Granite Partners I*:

> *In pari delicto* bars claims against third parties, but does not apply to corporate insiders or partners. Otherwise, a trustee

could never sue the debtor's insiders on account of their own wrongdoing. As we have stated, only the trustee has standing to sue insiders ... for injuries to a corporation or a limited partnership arising from their waste, mismanagement or breach of fiduciary duty.

194 B.R. at 332 (footnote omitted).

**24.** The Court does not rule out the possibility that, especially considering the latitude to be given complaints under *Conley v. Gibson*, the allegations with respect to the Secret Agreement could also be characterized as for fraud, or for violations of 18 U.S.C. §§ 152 or 154. Ultimately, however, the essence of the claim is the same—failure to report the wrongful action by Beeler.

**25.** The Debtor describes the Second Cause of Action as "based on fraud and deceit." (Tr. Supp. Mem. at 2).

**26.** *See, e.g., Mediators, Wight, Breeden, Granite Partners I.*

As a result, while the management action necessary to trigger the *Wagoner* Rule plainly is present, there also is sufficient basis for considering the applicability of the Adverse Interest Exception.[27] Given the allegation of Cayea's actual knowledge of the Secret Agreement,[28] and at least an issue of fact as to whether the Secret Agreement was solely for Beeler's benefit and not for the benefit of the corporation, the motion to dismiss under the *Wagoner* Rule, insofar as directed to the Second Cause of Action, is denied.[29]

### 2. Third Cause of Action

The Third Cause of Action, alleging breaches of fiduciary duty other than those relating to the Secret Agreement, is difficult to analyze for *Wagoner* Rule purposes (and other purposes as well, as noted below), because the acts by the Brand Cayea Defendants that are said to constitute the breaches of fiduciary duty are not stated, and the basis for independent breaches of fiduciary duty on the part of any of the Brand Cayea Defendants (in contrast to aiding and abetting Beeler's breaches of fiduciary duty) is similarly not stated. Based on what was pleaded, the Court can

at best see (even with the deference required under *Conley v. Gibson* ) aiding and abetting of breaches of fiduciary duty, and not independent breaches of fiduciary duty by any of the Brand Cayea Defendants, and it is not clear that claims even for that have been shown at this juncture. Once more the *Wagoner* Rule at least initially must be considered, because while it is clear that the Wagoner–*Hirsch* requirement of particularized injury to the debtor (in contrast to creditors or others) has satisfactorily been alleged, the Brand Cayea Defendants have shown the management participation in the alleged wrongdoing sufficient to satisfy, at least initially, the *Wagoner* Rule.

But the issue for *Wagoner* Rule purposes, once more, is to what extent each alleged breach of fiduciary duty by Beeler was of the type to trigger the Adverse Interest Exception as well. Some of them might and others might not, and the Court does not believe that it can decide this on motion. *See Wight*, 219 F.3d at 87 (approving determination of district court not to decide Adverse Interest Exception issue on 12(b)(6) motion); *Wedtech*, 138 B.R. at

---

27. The Trustee did not argue this, but the Court considers it its responsibility to consider these matters under *Conley v. Gibson.*

28. The Complaint alleges actual knowledge by Cayea of the Secret Agreement (Cmplt.¶ 30), as it alleges actual knowledge by Cayea of all of the other allegedly wrongful acts (*id.* ¶ 29), and thus the Court does not need to reach, and does not reach, the difficult issues as to the extent, if any, to which lawyers for debtors have a duty to investigate what management is doing, or the extent to which they should be responsible for their clients' conduct in the absence of actual knowledge of it. Indeed, by declining to dismiss this claim on motion, the Court is not even determining that with the requisite knowledge, a lawyer for the Debtor necessarily would be liable; those issues can better be decided after more extensive factual development and briefing.

29. The Court also does not need to reach, and does not reach, the Trustee's argument that because the Brand Cayea Defendants, as debtor's counsel, owed fiduciary duties to the estate in their own right (a matter the Brand Cayea Defendants do not deny), the *Wagoner* Rule does not apply at all. Other than by reason of taking payment of unauthorized fees (which is separately actionable, and as to which the Trustee does have standing, as discussed below), the Trustee has not suggested that the Brand Cayea Defendants were guilty of any breach of fiduciary duty other than by reason of things that were done by the Debtor with their knowledge and on their watch—which seem to be more appropriately viewed as claims for aiding and abetting other breaches of fiduciary duty.

8 (denying summary judgment, by reason of existence of disputed issues of fact, on *Wagoner* Rule controversy, where potential Adverse Interest Exception issues existed). The Court is not in a position to dismiss the Third Cause of Action under the *Wagoner* Rule.[30]

### 3. Fourth Cause of Action

The Complaint's Fourth Cause of Action charges the Brand Cayea Defendants with malpractice and negligence.[31] The essence of the claim is that the Brand Cayea Defendants' malpractice and/or negligence permitted the Debtor—which as a practical matter means Beeler—from doing the things that it did, which are charged to be breaches of fiduciary duty in their own right.

In *Hirsch*, the Second Circuit applied *Wagoner* to deprive standing to a trustee to sue the debtor's accountant. Two types of wrong were alleged: (1) the provision of misleading information to the Ponzi scheme investors, and (2) providing deficient professional services to the debtor. 72 F.3d at 1092.

In a hardly controversial aspect of its ruling that is not germane here, the Second Circuit held that the claims predicated on the misleading information to investors were the property of the investors and could only be asserted by them. *See id.* at 1094. With respect to those claims premised on the accountant's professional malpractice, the *Hirsch* court cited *Wagoner* principles, and noted that while there was at least a "theoretical possibility that some independent financial injury to the Debtors might be established ... as a result of the alleged professional malpractice by defendants-appellee," it was persuaded that the

*Wagoner* rule "should be applied ... and that ... [the trustee] is precluded from asserting the professional malpractice claims alleged in the [c]omplaint because of the [d]ebtors' collaboration with the defendant-appellees in promulgating and promoting the Colonial [debtor] Ponzi schemes." *Id.* at 1094. Accordingly, it found the trustee to lack standing with respect to both claims, and affirmed the decision of Judge Cabranes, in the district court below, dismissing the trustee's complaint. *See id.* at 1095.

Thereafter, in *Breeden,* Judge Sprizzo granted summary judgment to Bennett Funding's former attorneys after the chapter 11 trustee for the Bennett Funding estate brought an action against them for professional malpractice, breach of fiduciary duty, breach of contract, unjust enrichment, negligent misrepresentation, negligence and fraudulent transfer of funds based on services they had rendered to Bennett Funding Group prior to its bankruptcy filing. *Breeden,* 268 B.R. 704. Applying *Wagoner,* Judge Sprizzo found that "asserting that the malpractice of ... outside counsel ... allowed (management) to perpetuate their fraudulent scheme is sufficiently analogous to implicate the *Wagoner* rule and defeat the trustee's standing." *Id.* at 709.

Plainly the *Wagoner* Rule applies, then, to negligence or malpractice claims of this nature, unless the Adverse Interest Exception also applies. Once more the vagueness of the Complaint—and in particular the failure to describe with specificity what actions or inactions were negligent, and to what actions of the Debtor they related—

---

**30.** The Court believes, however, that by reason of the deficiencies noted above, the Third Cause of Action fails to meet the requirements of Fed.R.Civ.P. 12(b)(6), and must be dismissed for that reason, albeit with leave to replead. *See* Section "(D)" below.

**31.** *See* Tr. Supp. Br. at 2.

makes it impossible to determine the Adverse Interest Exception issue on motion.

Thus the Fourth Cause of Action survives, for the time being, attack under the *Wagoner* Rule, though the deficiencies noted make it subject to attack under Rule 12(b)(6).

*Fifth Cause of Action*

■ The Fifth Cause of Action alleges the receipt by Brand Cayea of unauthorized payments from the Estate and seeks recovery of these fees. Defendant Brand Cayea is alleged to have received unauthorized fee payments during the pendency of the Chapter 11 case without ever filing a fee application or obtaining an order authorizing payment of fees. As the representative of the estate, the Trustee has a variety of rights under federal law—indeed, under the Bankruptcy Code itself—to recover these fees, and the motion to dismiss the Fifth Cause of Action must be denied.

Even without the deference *Conley v. Gibson* requires, the Fifth Cause of Action alleges that Brand Cayea was paid legal fees for postpetition services without either the authorization or application required under sections 330 and 331 of the Bankruptcy Code. If proven, such would be unauthorized postpetition transfers, avoidable under section 549 of the Code, and recoverable under section 550 of the Code. The rights to avoid such transfers, and to recover them for the benefit of the estate, are expressly conferred by federal law on the trustee. *See* Bankruptcy Code section 549 (with exceptions not relevant here, "the *trustee* may avoid a transfer of property of the estate (1) that occurs after the commencement of the case and (2) ... that is not authorized under this title or by the court"); section 550 (with exceptions not applicable here, "to the extent that a transfer is avoided under section ... 549, ... *the trustee may recover, for the benefit*

*of the estate,* the property transferred ...") (emphasis added in each case).

To the extent receipt thereof was improper, legal fees also may be recovered under section 105(a) of the Code, and by disgorgement under the common law implementing sections 330 and 331 of the Code. *See In re EZ Feed Cube Co., Ltd.,* 123 B.R. 69, 74 (Bankr.D.Or.1991) (trustee may, if action is timely, recover legal fees paid postpetition without court authorization under section 549, and, in any event, court, may, on its own motion or upon the request of any party in interest, including the trustee, invoke its powers under § 105(a) to order a professional to repay unauthorized fees to the estate).

Thus the Trustee has the standing, under federal law, to assert, for the benefit of the estate, claims to recover counsel fees that had been unlawfully paid. It would be turning the *Wagoner* Rule and concepts of *in pari delicto* on their heads to hold that the Trustee lacks standing to recover such payments.

Dismissal of the Fifth Cause of Action is denied.

### D.

### *Other Deficiencies in Third and Fourth Causes of Action*

■ As noted above, the deference required under *Conley v. Gibson* requires that the Court not dismiss, under the *Wagoner* Rule, the Third and Fourth Causes of Action, so as to protect the estate against what is at least a significant possibility that some of the acts complained of might fall within the Adverse Interest Exception to the *Wagoner* Rule. However, deficiencies in the pleading of those claims are apparent from the discussion above.

■ While claims for fraud are subject to the additional pleading requirements of

Fed.R.Civ.P. 9(b), claims for negligence and malpractice are not, nor are claims for breaches of fiduciary duty except where the alleged breach of fiduciary duty is based on fraud. *See Schupak v. Florescue,* 1993 WL 256572 at *2–*3 (S.D.N.Y. July 8, 1993) (Rule 9(b) is not applicable to breach of fiduciary duty claims; "it applies only 'to ... claims sounding in fraud.' "). They are instead subject to the general rules of pleading of Fed.R.Civ.P. 8, which require the complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2); that "[e]ach averment of a pleading shall be simple, concise, and direct," Fed.R.Civ.P. 8(e)(1); and, of course, that they state one or more claims upon which relief can be granted.

 With respect to the first two requirements, the Second Circuit has instructed the lower courts that:

> Under the Rules' liberal pleading standards, a plaintiff must disclose sufficient information to permit the defendant "to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery."

*Kittay v. Kornstein,* 230 F.3d 531, 541 (2d Cir.2000) ("*Kittay* ") quoting *Ricciuti v. New York City Transit Authority,* 941 F.2d 119, 123 (2d Cir.1991). It has further cautioned, however, that:

> Dismissal ... is usually reserved for those cases in which the complaint is so confused, ambiguous, vague or otherwise unintelligible that its true substance, if any, is well disguised.

*Id.,* quoting *Salahuddin v. Cuomo,* 861 F.2d 40, 42 (2d Cir.1988).

In *Kittay,* the Second Circuit reversed, as an abuse of discretion, an order of the district court that had dismissed a claim for relief in a complaint against a former law firm for the debtor, with leave to replead, for Rule 8 deficiencies.[32] However, that complaint more clearly articulated the basis for the claim for relief than either of the Trustee's Third or Fourth Causes of Action here. Additionally, here the Brand Cayea Defendants have moved against the Complaint on more than just *Wagoner* Rule grounds, including, in particular, failures of the Complaint to allege the basis for the alleged breaches of fiduciary duty; the acts forming the alleged malpractice; causation; and the nature of the damage resulting from the various alleged acts of wrongful conduct.

If the Court were examining the Complaint solely under the requirements of Fed.R.Civ.P. 8, the Court believes that it would be compelled, under *Kittay,* to live with the quality of pleading in the Complaint, and not to go so far as to dismiss it (even with leave to replead) on the basis that it is so "confused, ambiguous, vague or otherwise unintelligible that its true substance, if any, is well disguised." *See Kittay,* 230 F.3d at 541. Here, however, the deficiencies in the Complaint apart from argued violations of the *Wagoner* Rule—*e.g.,* failures to allege "facts specifying any misconduct or wrongdoing [which] constitutes a breach of fiduciary duty,"[33] and the alleged acts of negligence, causation, and resulting damage[34]—are the sub-

---

**32.** The court noted that "[g]iven its observation that Kittay's allegations could state a claim for relief, the District Court must have found the allegations deficient only in their form," and thus, while the District Court had dismissed under Rule 12(b)(6), it appeared that its dismissal was actually based on Rule 8 deficiencies. *See* 230 F.3d at 541.

**33.** Brand Cayea Defendants' Dism. Mot. at 14.

**34.** *Id.* at 14–15.

ject of a Rule 12(b)(6) motion expressly premised on those deficiencies, and, for those reasons and others, this Court is not yet in a position to conclude, as did the District Court in Kittay,[35] that the allegations of the Complaint here do state a claim for relief, and that deficiencies are only matters of style and form. While the Court is fully prepared to take factual allegations of the Complaint, insofar as they have been pleaded, as true, it cannot discern the factual and legal theories on which the Third and Fourth Causes of Action rest, and with holes as gaping as those here, the Court does not believe it should speculate as to legal or factual predicates upon which the Trustee might choose to rely.

The Court expresses no view now as to whether, after fleshing out her factual predicates and legal theories, the Trustee might be able to state claims akin to the Third and Fourth Causes of Action upon which relief could be granted. But the deficiencies require dismissal now, with leave to replead.

For assistance to the Trustee in that regard, the Court identifies deficiencies that were of concern to it, as contrasted to matters of concern or motion by the Brand Cayea Defendants. With respect to the Third Cause of Action, which seemingly alleges breaches of fiduciary duty, aiding and abetting such, or both, the Court notes that it was troubled by the failure of the Trustee to plead, with respect to the Third

Cause of Action and the Brand Cayea Defendants, (1) to what extent they are charged with their own breaches of fiduciary duty, on the one hand, or aiding and abetting Beeler's breaches of fiduciary duty on the other; (2) the particular breach(es) of fiduciary duty with which the Brand Cayea Defendants are charged, or as to which they are charged with aiding and abetting; and (3) where aiding and abetting is concerned, the nature of the alleged substantial assistance.[36]

With respect to the Fourth Cause of Action, the Court was troubled by the failure of the Complaint to plead (1) in what manner, and with respect to what, the Brand Cayea Defendants are alleged to have been negligent or to have committed malpractice—whether the alleged negligence and malpractice is based on action or inaction, wrong advice, bad judgment, allowing things to happen on one's watch, when one has actual knowledge, or some other basis; and (2) causation.[37]

In each case, it is not good enough merely to indiscriminately reallege 33 paragraphs or more of generalized allegations preceding the claim, without identifying, with some clarity, the factual and legal bases upon which the Complaint rests. While any amended complaint hardly need lay out these matters in excruciating detail, it does need to provide the Brand Cayea Defendants of fair notice of the wrongful conduct with which they are charged.

**35.** *See* n. 32, *supra.*

**36.** The Court does not, however, see deficiencies in the allegations with respect to the specifics of resulting injury.

**37.** The Brand Cayea Defendants argue that there is lacking an allegation that the loss could have been avoided if they had not been negligent—as it might be required in malpractice cases when a lawyer fails to file an action on time. Brand Cayea Defendants' Dism. Mot. at 14. While the Court is not sure whether the analogy is wholly apt, it believes that something more with respect to causation now must be alleged.

However, the Court does not agree with the Brand Cayea Defendants that resulting damage is insufficiently alleged. Brand Cayea Defendants' Dism. Mot. at 15. The Court does not consider there to be material deficiencies in that respect.

The Third and Fourth Causes of Action are dismissed, with leave to replead.

## II.

### Motion to Disqualify

#### A.

 Both parties agree that the Court has discretionary power in determining a motion to disqualify. *See, e.g., Purgess v. Sharrock,* 33 F.3d 134, 144 (2d Cir.1994) ("The disqualification of an attorney in order to forestall violation of ethical principles is a matter committed to the sound discretion of the district court"); *W.T. Grant Co. v. Haines,* 531 F.2d 671, 676 (2d Cir.1976) ("[R]emedy of disqualification rests in the discretion of the district court and its determination will only be upset upon a showing of abuse"); *Hull v. Celanese,* 513 F.2d 568, 571 (2d Cir.1975) ("*Celanese*") ("The dispatch of this duty [to determine disqualification] is discretionary in nature ..."). The determination is based on the specific facts and circumstances in a case. *See, e.g., Hartford Accident and Indemnity Co. v. RJR Nabisco, Inc.,* 721 F.Supp. 534, 538 (S.D.N.Y.1989) (Walker, J.) ("*Hartford A & I*"). The party moving for disqualification of opposing party's counsel bears the burden of demonstrating a genuine conflict of interest. *See Guilford Mills, Inc. v. Torf,* 1987 WL 12406 *3 (S.D.N.Y.1987) (Haight, J.).

 While "[a]ny doubt is to be resolved in favor of disqualification," *Celanese,* 513 F.2d at 571 (citation omitted), the Court recognizes that in considering a motion to disqualify, a court must take into account "a client's right freely to choose his counsel ... which ... must be balanced against the need to maintain the highest standards of the profession." *See Government of India v. Cook Industries, Inc.,* 569 F.2d 737, 739 (2d Cir.1978) ("*Cook Indus.*"); *Evans v. Artek Systems Corp.,* 715 F.2d 788, 791 (2d Cir.1983) ("*Artek Systems* ").

A client whose attorney is disqualified incurs a loss of time and money in being compelled to retain new counsel who in turn ha[s] to become familiar with the prior comprehensive investigation which is the core of modern complex litigation. The client moreover may lose the benefit of its longtime counsel's specialized knowledge of its operations.

*Cook Industries,* 569 F.2d at 739; *accord Artek Systems,* 715 F.2d at 791; *see also Hartford A & I,* 721 F.Supp. at 539.

The Court also recognizes the potential of parties to utilize motions to disqualify for tactical purposes in an adversary proceeding, "and that 'even when made in the best of faith, such motions inevitably cause delay.'" *Artek Systems,* 715 F.2d at 791–792; *see also Allegaert v. Perot,* 565 F.2d 246, 251 (2d Cir.1977).

#### B.

 The Trustee has declined to waive the conflict of interest presented by Brand Cayea's representation of the Beeler Defendants, and contends that Brand Cayea cannot, consistent with applicable ethical obligations, represent the Beeler Defendants under the facts presented here. The Court agrees, for at least two separate reasons.

#### 1.

First, and most fundamentally, Brand Cayea has an inherent conflict in protecting its own interests, as a defendant, and those of the Beeler Defendants. This would be true if, as is the case now, Brand Cayea is serving as a kind of pro se counsel for the Brand Cayea Defendants, on the one hand, or if new, separate, counsel were to be retained to represent the Brand Cayea Defendants, on the other.

While the exact scope of the future litigation may depend on any decisions by the Trustee to replead with respect to the Third and Fourth Causes of Action, and any future motion practice with respect to the Complaint as it might be amended, it is impossible to ignore the general landscape of the litigation as it likely will emerge: Beeler, the Debtor's general partner, did a number of things that the Trustee contends were breaches of fiduciary duty, for which the Brand Cayea Defendants will be charged with responsibility. It will be in the Brand Cayea Defendants' interest to contend, and try to prove, that Beeler acted on his own, without their knowledge and/or counsel, or against their advice. Conversely, it will be in Beeler's interest to contend, and try to prove, that he acted pursuant to the Brand Cayea Defendants' advice, or that after discussions with his counsel, he thought he was acting properly. These, by themselves, are hopeless conflicts, and the Court suspects that it has only scratched the surface in identifying them.

In *Greene v. Greene,* 47 N.Y.2d 447, 418 N.Y.S.2d 379, 391 N.E.2d 1355 (1979), the New York Court of Appeals approved the disqualification of a law firm where counsel had a disabling conflict, in a case with facts quite similar to those here. There the plaintiff, who was the beneficiary (among other things) of a trust, sued the law firm of Finley, Kumble, Wagner, Heine & Underberg and one of its partners, for alleged breach of fiduciary duties, fraud, "and a host of other wrongs" with respect to the creation and management of the trust. *See id.* at 450, 418 N.Y.S.2d at 381, 391 N.E.2d 1355. Two former partners of Finley Kumble had joined the law firm of Eaton, Van Winkle, Greenspoon & Grutman, which was representing the plaintiff. *Id.* The defendants moved to disqualify the Eaton firm from representing the plaintiff, and the New York Court of Appeals agreed that the Eaton firm should be disqualified. *Id.*

In so holding, the New York Court of Appeals noted that the two members of the Eaton firm could be liable if the plaintiff were to prevail against Finley Kumble; thus the ability of the Eaton firm zealously to represent the interests of its client, the plaintiff, was impaired by the personal exposure of the two partners. The Court of Appeals noted that "where it is the lawyer who possesses a personal, business or financial interest at odds with that of his client," ethical prohibitions against representations of conflicting interest "apply with equal force." *Id.* at 452, 418 N.Y.S.2d at 382, 391 N.E.2d 1355. It continued:

> Viewed from the standpoint of a client, as well as that of society, it would be egregious to permit an attorney to act on behalf of the client in an action where the attorney has a direct interest in the subject matter of the suit. As in the dual representation situation, the conflict is too substantial, and the possibility of adverse impact upon the client and the adversary system too great, to allow the representation. In short, a lawyer who possesses a financial interest in a lawsuit akin to that of a defendant may not, as a general rule, represent the plaintiff in the same action.

*Id.*

Here, while the conflict is between lawyer and co-defendant, rather than between lawyer and plaintiff, the principle is no less applicable. In each case, the ability of the lawyer zealously to represent its proposed client(s)—here, the Beeler Defendants—is impaired by its own potential civil exposure.

Canon 9 of the Code of Professional Responsibility broadly states that "a lawyer should avoid even the appearance of professional impropriety." While courts

are generally reluctant to rest disqualification of counsel solely on the principles of Canon 9, and instead generally require proof of a violation of another Canon, see *Hartford A & I*, 721 F.Supp. 534, 538 (S.D.N.Y.1989) (Walker, J.), this Court sees the present situation as a classic violation of Canon 5—that "[a] lawyer should exercise independent professional judgment on behalf of a client." Attempting to represent one or more clients; such as the Beeler Defendants, when one has one's own interests to protect, is inconsistent with each of those Canons.

Brand Cayea responds by contending that here there would in fact be no such conflict, because the Brand Cayea Defendants and Beeler would have a joint interest in attributing blame to Murray, and that the Trustee's interests and Beeler's interests are "unquestionably aligned insofar as each seeks recovery from Murray."[38] This is a wholly unsatisfactory answer. It fails to address numerous Trustee allegations that have nothing to do with Murray, and also fails to address the fact that even if Beeler and the Brand Cayea Defendants wish to point the finger at Murray, and can show Murray's involvement as well, that still may not be a defense to the Trustee's allegations as against one or more of them. While they may wish this litigation to focus on Murray, it is not at all clear that either the Trustee or the Court will consider such focus, or at least exclusive focus, to be appropriate. There is no reasonable basis for a view that the litigation could be compartmentalized in that fashion.

### 2.

Disqualification is also necessary here because it is obvious that one or more of the Brand Cayea Defendants will most likely be called as a witness. DR 5-102 provides, in relevant part:

> A lawyer *shall not act* . . . as an advocate on issues of fact before any tribunal if the lawyer knows or it is obvious that the lawyer ought to be called as a witness on a significant issue *on behalf of the client,* except that the lawyer may act as an advocate and also testify:
>
> . . .
>
> (4) As to any matter, if disqualification as an advocate would work a substantial hardship on the client because of the distinctive value of the lawyer as counsel in the particular case.[39]

22 N.Y. Comp.Codes R. & Regs. § 1200.21 (emphasis added) ("DR 5-102").

This adversary proceeding surrounds, and indeed is consumed by, the allegations of failures to comply with the Bankruptcy Code and Rules and breaches of fiduciary duty, during the time in which the Debtor was in chapter 11 and Brand Cayea was the Debtor's counsel. It is possible that one or more of the Brand Cayea Defendants knew of, and/or counseled, some or all of the alleged wrongful conduct; it is also possible that Beeler might contend that he acted in the manner in which he did after seeking and obtaining the counsel of one or more of the Brand Cayea Defendants. The opposite is also possible, and it may be that the facts are somewhere in between. In any event (and perhaps depending on what any of the Brand Cayea Defendants might know), it is highly likely, if not certain, that one or another of the Trustee or the Beeler Defendants (and perhaps Murray as well) would legitimately desire Brand Cayea Defendant testimony, or that Brand Cayea would need to

---

**38.** Brand Cayea Opp. Disqual. # 1 at 11.

**39.** DR 5-102(a) includes four exceptions, only one of which, DR 5-102(a)(4), is in this Court's view relevant to this discussion.

offer such testimony in its own defense. Any such testimony would go to issues at the heart of the case.

With DR 5–102 so plainly applicable, the Court then considers whether the hardship exception, argued by Brand Cayea (and impliedly Beeler) applies. The Court believes that it does not. While it is plainly true that one or more of the Brand Cayea Defendants, and particularly Cayea, does have substantial knowledge of facts relevant to the case, and that replacing Brand Cayea as counsel would result in additional costs to Beeler, the Court is not in a position to find, and does not here find, that Brand Cayea would provide any distinctive value in its defense of the Beeler Defendants, or that there would be *substantial* hardship. Defendants charged with wrongful conduct routinely hire defense counsel who were not participants in the alleged wrongful conduct, with no demonstrable prejudice, and it would be

turning DR 5–102 on its head to say that the loss of the windfall of the "free education" of defense counsel amounts to the requisite hardship when it is counsel's very participation in the events in dispute that both provides the benefit and requires the need for disqualification in the first place.

*3.*

The Trustee argues further that none of the Brand Cayea Defendants can represent the Beeler Defendants because they would be acting adverse to their former client, the Estate, on a matter "substantially related" to the matters with respect to which they provided services.[40] While this argument too may have merit, based on DR 5–108(a)(1)'s plain text, the unique facts of this case make the considerations usually applicable in determinations of that character less than wholly applicable here,[41] and the Court does not need to decide this issue in light of its conclusions above.

---

**40.** 22 N.Y. Comp.Codes R. & Regs. § 1200.27 ("DR 5–108(a)"), relating to conflicts of interest with a former client, states in relevant part that with exceptions (relating to former government lawyers) not relevant here:

> [A] lawyer who has represented a client in a matter shall not, without the consent of the former client after full disclosure:
>
> 1. Thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client.
>
> 2. Use any confidences or secrets of the former client except as permitted by DR 4–101(C) or when the confidence or secret has become generally known.

McKinney's Judiciary Law App., Code of Professional Responsibility, DR 5–108(a). Similar rules apply if the former representation was by a firm with which the lawyer formerly was associated. *See* DR 5–108(B).

**41.** *See Artek Systems,* 715 F.2d at 791 (identifying three factors to be considered in connection with motions for disqualification of counsel by a former client—that (1)the mov-

ing party is a *former client* of the adverse party's counsel; (2) there is a *substantial relationship* between the subject matter of the counsel's prior representation of the moving party and the issues in the present lawsuit; and (3) the attorney whose disqualification is sought had access to, or was likely to have had *access to relevant privileged information* in the course of his prior representation of the client.) (emphasis added).

While each of the requirements of DR 5–108(A) appears to be satisfied, along with the requirements of caselaw like *Artek Systems,* a consideration typically present in the situations they address is arguably missing here—the need for protection of confidences shared with counsel during the first representation. Here each of Beeler and the Brand Cayea Defendants would, by reason of their prior actions and communications, already have access to (or be the source of) all of the information that would normally be protected under this rule. It is also arguable that by reason of that, with respect to the people that matter, any confidential information "has become generally known."

## C.

■ The Brand Cayea Defendants additionally argue a judicial estoppel. Based on aspects of the Second Circuit's decision in *Kittay, supra,* they contend that their representation of the Beeler Defendants has already been judicially blessed, because in an adversary proceeding in May 1999 brought by an entity controlled by Murray (which then named the Debtor—which then was still in chapter 11—and Beeler, among others, as defendants), Brand Cayea appeared as counsel for the Debtor and Beeler, and that the United States Trustee, responsible for appointing the chapter 7 Trustee, never objected to the dual representation at the time.[42]

The Court does not agree. In *Kittay,* chapter 7 trustee David Kittay sought damages from the law firm of Kornstein Veisz & Wexler ("Kornstein") for alleged wrongful conduct in connection with Kornstein's simultaneous representation, as special counsel, of the debtor Luckey Platt and Burstin Investors ("Burstin"), a limited partner of Luckey Platt, which was competing with Luckey Platt for proceeds of a New York state court judgment against Luckey Platt's former general partner. *See* 230 F.3d at 534. The Second Circuit affirmed the dismissal of one of the two claims against Kornstein, which was based on allegedly favoring the interests of Burstin over those of Luckey Platt in connection with a state court appeal, after a bankruptcy court order that had authorized Kornstein to act for both entities.

But the Second Circuit came to that view because after full disclosure and con-sideration of the potential conflict at the Bankruptcy Court level, the Bankruptcy Court had crafted an arrangement under which whatever recovery was obtained, on behalf of either competing plaintiff, would be placed into an escrow, for subsequent determination by the Bankruptcy Court of the competing claims. The Bankruptcy Court had essentially "eliminat[ed] any incentive to compete," 230 F.3d at 538, and "aligned the interests of Luckey Platt and Burstin for purposes of the state court appeal." *Id.* Thus actions taken in the state court appeal that seemingly favored Burstin had no substantive significance.[43]

But the Second Circuit there cautioned:

While we hold that the Bankruptcy Court's escrow order effectively resolved any conflict of interest, the court's actions in this case may not be appropriate in all cases.... Thus, we encourage courts to be aware of the myriad complications that can arise in conflict situations and to craft resolutions with prudence and utmost sensitivity for potential misstep by litigants and their counsel.

*Id.* at 540.

Here contentions as to any similarity between this case and *Kittay* are frivolous. In *Kittay* there was express judicial consideration of the conflict that later became at issue, and here there was no such consideration of any kind, much less of the conflict that is now before the Court. And aside from that not-insignificant fact, here at the time of the earlier controversy with Murray, the interests of the estate and Beeler, so far as the UST and the Court

---

42. *See* Brand Cayea Opp. Disqual. # 1 at 15–16.

43. Significantly, the Second Circuit declined to approve the dismissal of a second claim, with respect to post-appeal actions and the allegedly wrongful disposition of a pot of funds received in settlement. Implicit in that is the hardly debatable principle that the absence of a conflict with respect to one set of facts does not insulate an attorney from a conflict with respect to a different set of facts.

were aware, were aligned, and certainly the estate was not bringing claims against either Beeler or any of the Brand Cayea Defendants. The Trustee had not yet been appointed, and the needs and concerns that the UST was called upon to address were wholly different than those the Trustee needs now to address. The circumstances cannot in any way be compared—much less make out the traditional aspects of an estoppel.

*D.*

The Trustee's motion to disqualify any of the Brand Cayea Defendants from representing any of the Beeler Defendants is, accordingly, granted.

SO ORDERED.