In re A.R. BARON & CO., INC., Debtor.

James W. Giddens, as Trustee for the Liquidation of the Business of A.R. Baron & Co., Inc. and as assignee of claims of certain former customers of A.R. Baron & Co., Inc., Plaintiff,

v.

D.H. Blair & Co., Inc., D.H. Blair Investment Banking Corp., Joseph Morton Davidowitz, Rosalind Davidowitz, Kenton E. Wood, Ruki Renov, Kalman Renov, Esther Stahler, Alan Stahler, Rivki Rosenwald, Lindsey Rosenwald, Laya Perlysky, Dov Perlysky, Kinder Investments L.P., Venturetek L.P., Alfred Palagonia, Vito Caportoto and Michael Siciliano, Defendants.

Bankruptcy No. 96–8831A(PCB)SIPA. Adversary No. 01–02569.

United States Bankruptcy Court, S.D. New York.

July 24, 2002.

**796**

Hughes, Hubbard & Reed, LLP, by James B. Kobak, Jr., Derek J.T. Adler, New York City, for James W. Giddens, Trustee for the Liquidation of the Business of A.R. Baron & Co., Inc.

Nixon Peabody, LLP, by Frank Penski, Stacey B. Slater, New York City, for Kenton Wood and Vito Capotorto.

Proskauer Rose, LLP, by John H. Gross, New York City, for D.H. Blair & Co., Inc., et al.

### MEMORANDUM DECISION GRANTING DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT

PRUDENCE CARTER BEATTY, Bankruptcy Judge.

This adversary proceeding was commenced by a complaint filed on April 9, 2001 by James W. Giddens as trustee (the "Trustee") for the liquidation of the business of A.R. Baron & Co., Inc. ("A.R. Baron"). The amended complaint alleges that (1) monies transferred from A.R. Baron to each of the defendants, and the proceeds of such transfers, unjustly enriched the defendants, (2) certain defendants aided and abetted breaches of fiduciary duty by certain principals of A.R. Baron, and (3) certain defendants violated state and federal antitrust laws through a scheme to fix artificial prices for certain securities. Based on these allegations, the Trustee seeks to recover monies transferred as well as damages on behalf of A.R. Baron and its customers who assigned their claims to the Trustee.

Certain defendants have moved to dismiss the Trustee's amended complaint on the basis that he has failed to state a claim upon which relief could be granted. They contend that, because A.R. Baron itself was complicit in the wrongdoing allegedly perpetuated by the third-party defendants, the Trustee is barred as a matter of law from pursuing claims for unjust enrichment and aiding and abetting breach of fiduciary duty on behalf of A.R. Baron. They also argue that, notwithstanding any assignment of the customers' rights to the Trustee, he does not have standing to assert claims on behalf of A.R. Baron's customers. The Court held a hearing on the motion, and the matter was taken under advisement. For the reasons that follow, the Court grants the defendants' motion to dismiss.

## BACKGROUND

As explained further below, for purposes of this motion, the facts alleged in the Trustee's amended complaint are presumed to be true. A.R. Baron operated as a securities broker-dealer from May 1992 through June 1996 and was the vehicle for a scheme whose primary purpose was to inflate artificially the prices of the firm's "house stocks." To accomplish the scheme, A.R. Baron's principals placed a large number of unauthorized trades in customer accounts. They also frequently prevented customers from realizing apparent profits by refusing to follow customer orders to sell shares when prices were high or, if they did sell, by investing the proceeds in other house stocks through unauthorized purchases rather than remitting funds to the customers. The market for A.R. Baron's house stocks was almost completely artificial.

On July 3, 1996, A.R. Baron filed a petition for relief under Chapter 11 of Title 11 of the United States Code (the "Code") in the United States Bankruptcy Court for the District of New Jersey. On July 11, 1996, the United States District Court for the Southern District of New York granted an application by the Securities Investor Protection Corporation ("SIPC") to appoint a trustee and initiate this proceeding under the Securities Investor Protection Act ("SIPA"), 15 U.S.C. §§ 78aaa 78lll (2000), thereby superseding A.R. Baron's earlier bankruptcy filing. The Trustee's duties under SIPA and the Bankruptcy Code include determining and, to the extent that assets are available, satisfying the claims of former A.R. Baron customers and other creditors of A.R. Baron's estate. The Trustee has brought this action to recover (1) monies funneled from A.R. Baron to each defendant, (2) damages caused by the assistance provided by defendants to A.R. Baron's principals in breaching their duties to the firm and its customers, and (3) damages caused to A.R. Baron's customers through certain defendants' involvement in a securities price-fixing scheme.

The defendants in this adversary proceeding are D.H. Blair & Co., Inc. (collectively with defendant D.H. Blair Investment Banking Corp., "Blair") and various persons and entities associated with that firm. It was at Blair that A.R. Baron's founders—Jeffrey Weissman and Andrew Bressman—learned how to run a "boiler room" securities operation. When they left Blair to found A.R. Baron, they agreed to pay Blair's chairman, defendant J. Morton Davidowitz (a.k.a. Morty Davis), millions of dollars in false profits from A.R. Baron. Defendants subsequently conspired with A.R. Baron's principals in various schemes to steal money from A.R. Baron and its customers.

Defendant Davis was the chairman of Blair and controlled the operations of that firm during the relevant time period. Defendant Rosalind Davidowitz is Davis's wife. Defendants Wood, Palagonia, Caportoto and Siciliano (collectively the "Blair Employee Defendants") were all senior executives and officers of Blair. Defendants Kinder Investments L.P. ("Kinder") and Venturetek L.P. ("Venturetek") are investment vehicles established to benefit members of Davis's family: defendants Rosalind Davidowitz, Kalman Renov, Alan Stahler, Rivki Rosenwald, Lindsey Rosenwald, Laya Perlysky, and Dov Perlysky (collectively, the "Davis Family Defendants").

As a condition of permitting Weissman and Bressman to leave Blair, Davis required them to promise that they would pay him at least $2 million in profits through each of A.R. Baron's first two IPOs. Pursuant to this agreement, A.R. Baron paid over $5 million to Kinder and

$2 million to Venturetek, both of whom the Davis Family Defendants are beneficiaries. These sums were transferred through trades in which A.R. Baron bought shares of its house stocks from Kinder and Venturetek through pre-arranged sales at artificial prices.

Blair and the Blair Employee Defendants provided support and assistance to A.R. Baron in its boiler room operations. Over the years, A.R. Baron personnel and the Blair Employee Defendants entered into many ad hoc arrangements for parking securities, selling particular securities to customers at fixed prices, and other concerted actions designed to keep A.R. Baron in business, help defraud A.R. Baron customers, and siphon money out of A.R. Baron. Davis, Blair, and the Blair Employee Defendants received substantial transfers of A.R. Baron money in connection with their role in these activities.

The Trustee's first claim for relief seeks to recover the property transferred from A.R. Baron to the defendants on the ground that they were unjustly enriched by these transfers. The sums the Trustee seeks to recover include, but are not limited to: (1) over $5 million transferred from A.R. Baron to Kinder and the Davis Family Defendants in connection with pre-arranged trades in Cypros securities at artificially inflated prices; (2) over $2 million transferred from A.R. Baron to Venturetek and the Davis Family Defendants in connection with pre-arranged trades in Innovir securities at artificially inflated prices; (3) over $16 million transferred to defendants Blair and Davis, as well as the Blair Employee Defendants, in connection with pre-arranged trades in certain stocks at artificially inflated prices; (4) monies transferred from A.R. Baron to defendants Blair, Davis, Davidowitz, and the Blair Employee Defendants in the form of "profits" on stock parking transactions in their respective accounts; (5) monies received by defendants Davis, Kalman Renov, Alan Stahler, and the Blair Employee Defendants in the form of "overrides," commissions, and other compensation arising as a result of illicit parking and other sham transactions with A.R. Baron; and (6) monies transferred from A.R. Baron to defendant Davis and the Davis Family Defendants in connection with short sales of A.R. Baron house stocks.

The Trustee's second claim for relief alleges that defendants Blair, Davis, Wood, Palagonia, and Siciliano aided and abetted A.R. Baron's principals in breaching their fiduciary duties to A.R. Baron and its customers. The Trustee seeks to recover damages in an amount to be determined at trial, but in no event less than $50 million representing the approximate sum that was looted from A.R. Baron.

The Trustee's third claim for relief asserts that defendants Davis, Caportoto, Palagonia, Wood, and Blair conspired with certain of A.R. Baron's principals to fix the prices at which certain securities were sold to customers of A.R. Baron and Blair. The Trustee seeks to recover monies as assignee of customers' claims, for the damages done to customers as a result of the price-fixing conspiracy.

## DISCUSSION

### I. Standard of Review

A motion under Federal Bankruptcy Rule 7012, which makes Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") applicable to adversary proceedings, tests the legal sufficiency of a complaint, but does not judge the weight of evidence which might be offered in its support. See *Bernheim v. Litt*, 79 F.3d 318, 321 (2d Cir.1996) (noting that, in reviewing 12(b)(6) motion, " '[t]he issue is not whether a plaintiff will ultimately prevail but whether

the claimant is entitled to offer evidence to support the claims'" (alteration in original) (quoting *Villager Pond, Inc. v. Town of Darien,* 56 F.3d 375, 378 (2d Cir.1995))). In considering a motion to dismiss under Rule 12(b)(6), a court should accept as true all well-pleaded factual allegations in the complaint and should view all reasonable inferences that can be drawn from the allegations in the light most favorable to the pleader. *See Mills v. Polar Molecular Corp.,* 12 F.3d 1170, 1174 (2d Cir.1993). Dismissal of a complaint is improper unless "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). In deciding the motion, a court must limit itself to the facts stated in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference. *See Dangler v. N.Y. City Off Track Betting Corp.,* 193 F.3d 130, 138 (2d Cir.1999). Applying this standard of review, the Court nonetheless finds that the Trustee's claims on behalf of A.R. Baron, as well as its customers, must be dismissed.

## II. *Trustee's Standing*

 The issues before the Court involve the Trustee's standing to bring this action either on behalf of A.R. Baron or on behalf of its customers. The Constitution limits the judicial power of federal courts to deciding cases or controversies. *See* U.S. Const. art. III, § 2, cl. 1. From this constitutional provision comes the doctrine of standing. *See Allen v. Wright,* 468 U.S. 737, 750–51, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984). Under the doctrine of standing, "[a] party must 'assert his own legal rights and interest, and cannot rest his claim to relief on the legal rights or interest of third parties.'" *Shearson Lehman Hutton, Inc. v. Wagoner,* 944 F.2d 114, 118 (2d

Cir.1991) (quoting *Warth v. Seldin,* 422 U.S. 490, 499, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)). Accordingly, a "'plaintiff must [1] allege personal injury [2] fairly traceable to the defendant's allegedly unlawful conduct and [3] likely to be redressed by the requested relief'" in order to have standing. *Hirsch v. Arthur Andersen & Co.,* 72 F.3d 1085, 1091 (2d Cir. 1995) (quoting *Allen,* 468 U.S. at 751, 104 S.Ct. 3315). The Second Circuit has observed that the "case or controversy" requirement imposed by Article III of the Constitution "coincides with the scope of the powers the Bankruptcy Code gives a trustee." *Wagoner,* 944 F.2d at 118. Thus, in the instant case, unless SIPA or the Bankruptcy Code permits the Trustee to bring the claims set forth in the amended complaint, they must be dismissed for lack of standing pursuant to Rule 12(b)(6).

## A. *Trustee's Claims on Behalf of A.R. Baron*

 As a general matter, a trustee stands in the shoes of the debtor and has standing to bring any action that the debtor could have instituted prepetition. *Wagoner,* 944 F.2d at 118 (2d Cir.1991). State law determines whether the claim asserted belongs to the debtor or to individual creditors. *Mediators, Inc. v. Manney (In re Mediators, Inc.),* 105 F.3d 822, 826 (2d Cir.1997); *Hirsch,* 72 F.3d at 1093. A trustee does not have standing to pursue claims on behalf of the debtor estate's creditors, but rather may only assert claims belonging to the debtor itself. *Caplin v. Marine Midland Grace Trust Co.,* 406 U.S. 416, 434, 92 S.Ct. 1678, 32 L.Ed.2d 195 (1972); *see* 4 Collier on Bankruptcy ¶ 541.08[6], at 541–51 (Lawrence P. King ed., 15th ed. rev. 2001) ("[W]here applicable law makes ... obligations or liabilities run to the corporate creditors personally, rather than to the corporation,

such rights of action are not assets of the estate under section 541(a) that are enforceable by the trustee."). For a trustee to have standing to pursue a claim against a third party, he must allege that the third party has injured the debtor in a manner distinct from injuries suffered by the debtor estate's creditors. *See Hirsch,* 72 F.3d at 1093 ("[W]hen creditors ... have a claim for injury that is particularized as to them, they are exclusively entitled to pursue that claim, and the bankruptcy trustee is precluded from doing so."); *Wagoner,* 944 F.2d at 118 ("[I]f a trustee has no power to assert a claim because it is not one belonging to the bankrupt estate, then he also fails to meet the prudential limitation that the legal rights asserted must be his own.").

■ In the Second Circuit, standing analysis further requires that a second inquiry be made to determine whether the debtor was complicit in the wrongdoing allegedly perpetuated by a third-party defendant. If such misconduct is imputed to the debtor, the injury is deemed to be suffered by the debtor's creditors rather than the debtor itself, thereby precluding a trustee from pursuing such a claim on behalf of the debtor. *See Hirsch,* 72 F.3d at 1094 (holding that, under Connecticut law, bankruptcy trustee lacks standing to sue accounting firm hired by debtor for malpractice in connection with debtor's Ponzi-scheme real-estate-investment operation); *Wagoner,* 944 F.2d at 119–20 (holding that, under New York Law, bankruptcy trustee lacks standing to sue debtor's broker for aiding and abetting unlawful investment activity of debtor's president and sole shareholder); *cf. Mediators,* 105 F.3d at 826 (holding that, under New York law, creditors' committee standing in shoes of debtor has no standing to bring claim against third parties alleged to have aided and abetted debtor's sole shareholder in

shareholder's breach of his fiduciary duty). From this follows the principle that "[a] claim against a third party for defrauding a corporation with the cooperation of management accrues to creditors, not the guilty corporation." *Wagoner,* 944 F.2d at 120; *see also Breeden v. Kirkpatrick & Lockhart, LLP,* 268 B.R. 704, 709 (S.D.N.Y.2001) ("A bankruptcy trustee lacks standing under New York law to seek recovery on behalf of a debtor company against third-parties for injuries incurred by the misconduct of the debtor's controlling managers." (citing cases, including *Wagoner* )). This principle is known as the *Wagoner* rule.

■ Because *Wagoner* involved a debtor that was managed by a sole shareholder, *Wagoner,* 944 F.2d at 116, the question remains of what constitutes the "cooperation of management" in the instance of multiple management personnel, such that a trustee would be barred from asserting claims on behalf of the debtor. The application of the *Wagoner* rule has extended to situations other than where the individual committing the fraud is a sole shareholder. In *Hirsch,* the Second Circuit found the *Wagoner* rule to apply—and thus preclude the trustee's malpractice claims—where both of the debtor's general partners collaborated with third-party defendants in the wrongdoing that formed the basis for the trustee's complaint. *Hirsch,* 72 F.3d at 1094. In *Wechsler v. Squadron, Ellenoff, Plesent & Sheinfeld LLP,* 212 B.R. 34 (S.D.N.Y.1997), the *Wagoner* rule was extended to apply "where *all relevant shareholders and/or decisionmakers* are involved in the fraud." *Id.* at 36 (emphasis added); *see also Lippe v. Bairnco Corp.,* 218 B.R. 294, 302 (S.D.N.Y.1998) (noting that, where "number of key officers and directors" of debtor knew about fraud, trustee lacks standing to bring claim for aiding and abetting breach of fiduciary

duty). Pursuant to the interpretation of the *Wagoner* rule in *Wechsler,* unless a complaint alleges the existence of an innocent decisionmaker who could have prevented the fraud, the wrongdoing will be imputed to the corporation. *Wechsler,* 212 B.R. at 36.

■ Imputation of wrongdoing to the debtor under the *Wagoner* rule may be avoided, however, if the "adverse interest" exception applies. The exception "rebuts the usual presumption that the acts and knowledge of an agent acting within the scope of employment are imputed to the principal." *Mediators,* 105 F.3d at 827 (citing *Center v. Hampton Affiliates,* 66 N.Y.2d 782, 784, 497 N.Y.S.2d 898, 488 N.E.2d 828 (1985)); *see also SIPC v. BDO Seidman,* 49 F.Supp.2d 644, 650 (S.D.N.Y. 1999) (noting that adverse interest exception "is an exception to the general rule in New York that knowledge acquired by an agent acting within the scope of his agency is imputed to his principal and the latter is bound by such knowledge"), *aff'd in part and vacated in part by* 222 F.3d 63 (2d Cir.2000). Only when the agent completely abandons the principal's interests does the exception apply. *Mediators,* 105 F.3d at 827; *SIPC,* 49 F.Supp.2d at 650. Accordingly, the exception is inapplicable "when the agent acts both for himself and for the principal though the primary motivation for the acts is inimical to the principal." *SIPC,* 49 F.Supp.2d at 650. Under these principles, the Court decides whether the Trustee has standing to assert claims on behalf of A.R. Baron.

■ The Trustee offers several arguments to support his assertion that he has standing to pursue the unjust enrichment and aiding and abetting breach of fiduciary duty claims alleged in the amended complaint on behalf of A.R. Baron. The Trustee argues that, because he seeks to recover those losses suffered directly by

A.R. Baron, rather than A.R. Baron's customers, *Wagoner* and its progeny do not apply. By virtue of the fact that a trustee generally has standing only to assert claims on behalf of the debtor, it is patently clear without any reference to the *Wagoner* rule that, to the extent any claim by the Trustee alleged money damages to creditors of A.R. Baron, he would lack standing to assert such a claim. On the other hand, *Wagoner* and subsequent cases have held that, notwithstanding any allegations of injury to the debtor, a trustee does not have standing to sue a third party for defrauding a corporation when management participated in the fraud. *See Hirsch,* 72 F.3d at 1094 (noting that, despite "a theoretical possibility that some independent financial injury to the Debtors might be established ... as a result of the alleged professional malpractice by defendants-appellees," *Wagoner* rule applied because of debtor's complicity in wrongdoing allegedly perpetuated by third-party defendants); *Wagoner,* 944 F.2d at 120 (stating that, despite allegation of injury to debtor, "[a] claim against a third party for defrauding a corporation with the cooperation of management accrues to creditors, not to the guilty corporation"). The Trustee's argument, therefore, is a nonstarter. The facts alleged by the Trustee in the amended complaint implicate A.R. Baron's management in the alleged fraud. Furthermore, the Trustee points to the indictment of A.R. Baron and thirteen of its executives and employees for conspiring to operate a criminal enterprise through A.R. Baron. Because the amended complaint does not allege the existence of innocent members of A.R. Baron's management who could have prevented the fraud, the Court finds that the *Wagoner* rule applies. *See SIPC,* 49 F.Supp.2d at 651 (holding that Trustee lacked standing to assert claims on A.R. Baron's behalf given "the

absence of any allegation in the Complaint that a member of Baron's management was innocent of the fraud and could have stopped it").

■ The Trustee attempts to escape the *Wagoner* rule by arguing that the adverse interest exception applies since the defendants' actions hurt A.R. Baron without serving any legitimate commercial purpose. Given that on December 17, 1997, A.R. Baron pleaded guilty to one count of enterprise corruption in New York State Supreme Court, it is impossible for the Trustee to contend that management was not acting on behalf of A.R. Baron, even though management's actions may have been to the detriment of the brokerage firm.[1] Accordingly, the Trustee may not avail himself of the adverse interest exception. The Court holds that the Trustee lacks standing and is thus precluded from pursuing the claims in the amended complaint on behalf of A.R. Baron.[2]

## B. Trustee's Claims on Behalf of A.R. Baron's Customers

The defendants argue that, because the Trustee lacks standing to assert claims on behalf of certain A.R. Baron customers, all three claims for relief must be dismissed. The Trustee responds that he has standing to assert the claims for three reasons: (1) by virtue of having received express contractual assignments from those customers whose claims have been paid, (2) by virtue that he is equitably subrogated to those customers whose claims have been paid;

and (3) by virtue of his status as bailee of the fund of customer property held by A.R. Baron prior to liquidation. For the reasons stated below, the Court holds that the Trustee is barred as a matter of law from pursuing the claims set forth in the amended complaint on behalf of A.R. Baron's customers, either as contractual assignee or equitable subrogee. The Court further holds that the Trustee lacks standing as bailee insofar as the amended complaint makes no allegations with respect to the customer claims that, if alleged, would grant him such standing. The Court will address each of the Trustee's arguments in turn.

### 1. Trustee's Standing as Assignee of Customers' Claims

The Trustee argues that, by virtue of satisfying the net equity claims of certain customers of A.R. Baron and the express contractual assignments he received in exchange, he has standing to assert on their behalf the unjust enrichment, aiding and abetting breach of fiduciary duty, and antitrust claims set forth in the amended complaint. In support of his argument, he states that SIPA authorizes him to condition payment of a customer's net equity claim on the customer's execution of assignments in whatever form deemed appropriate by the Trustee. In satisfying a customer's net equity claim, the Trustee has required each customer to execute a release and assignment form that states:

1. When the Trustee made the same argument on behalf of A.R. Baron in *SIPC v. BDO Seidman,* the Court rejected it. *See SIPC,* 49 F.Supp.2d at 651 (indicating that A.R. Baron's guilty plea to enterprise corruption indicated "the existence of 'sufficient unity' between Baron and its management to deprive the Trustee of standing," in spite of trustee's argument that "because the members of the Bressman Team [i.e., A.R. Baron's manage-

ment] acted solely for their individual benefit, Baron should not be held responsible for those fraudulent activities").

2. Because the Trustee lacks standing under the *Wagoner* rule to assert claims on behalf of A.R. Baron, the Court need not make a disposition with respect to the *in pari delicto* defense invoked by the defendants.

Claimant hereby assigns and transfers to the Trustee and/or SIPC all rights, including any and all causes of action, that Claimant may have against any third party, including but not limited to, A.R. Baron, Andrew Bressman, and any brokers or clearing brokers, and any proceeds derived therefrom, arising out of or relating to Claimant's account with A.R. Baron, to the extent of the Consideration and such sums, if any which Claimant may subsequently receive from SIPC upon the Claim.

The Court finds that the Trustee has disregarded SIPA's plain language. As a result, he has overreached his statutory authority by obtaining assignments of customer claims against third parties.

▆▆▆ The only claim that a customer is entitled to pursue under SIPA is a net equity claim. *Appleton v. First Nat'l Bank of Ohio*, 62 F.3d 791, 799 (6th Cir. 1995); *see* 15 U.S.C. § 78fff (a)(1) (stating that one purpose of liquidation proceeding is "to distribute customer property and (in advance thereof or concurrently therewith) otherwise satisfy net equity claims of customers"). A net equity claim is the dollar amount of a customer's account which would have been owed by the debtor if the debtor had liquidated the securities positions of the customer on the filing date, minus any indebtedness of the customer to the debtor. *Id.* § 78lll(11). Section 78fff–2(b) of SIPA authorizes a SIPC trustee to obtain assignments from customers whose claims he satisfies. *See id.* § 78fff–2(b) ("Any payment or delivery of property pursuant to this subsection may be conditioned upon the trustee requiring claimants to execute, in a form to be determined by the trustee, appropriate receipts, supporting affidavits, releases, and assignments . . . ."). The reference to assignment in that section, however, refers solely to payments for net equity claims and does not extend to claims against a third party. *See SIPC*, 49 F.Supp.2d at 654 n. 7 (stating):

> I cannot agree that Section 78fff–2(b), which deals generally with payments to customers in a liquidation proceeding, should be construed so broadly as to permit standing. When read in the entire context of Section 78fff, it is clear that those assignments relate to payments for net equity claims. And as stated above, that does not extend the Trustee's authority to bring suit beyond the brokerage firm-customer relationship to include claims against a third party.;

*Mishkin v. Peat, Marwick, Mitchell & Co.*, 744 F.Supp. 531, 554 (S.D.N.Y.1990) (stating):

> Furthermore, § 78fff–2(b) only allows the trustee to condition payments "pursuant to this subsection" upon the receipt of assignments. "This subsection" is specifically concerned with customers' net equity claims against the estate under SIPA liquidation. Payments "pursuant to this subsection" are payments of customer net equity claims against the estate in liquidation and nothing else.

Because section 78fff–2(b) makes it clear that the only payments a trustee can make to customers pursuant to that section are payments for net equity claims, it follows that the only claims that customers could have assigned to the Trustee are their net equity claims and not claims against the defendants. The Trustee therefore does not have standing as contractual assignee to pursue claims on behalf of A.R. Baron's customers.[3]

---

**3.** In the amended complaint, the Trustee solely relies on contractual assignment as the basis for his standing to pursue claims of certain A.R. Baron customers who purchased

### 2. *Trustee's Standing as Equitable Subrogee*

■ The Trustee sets forth two arguments to support his assertion that he may pursue claims as subrogee on behalf of A.R. Baron's customers. First, he asserts that SIPA provides a statutory basis for a SIPC trustee's analogous right of equitable subrogation. It is evident from the plain meaning of SIPA that SIPC's statutory subrogation right does not extend to a SIPC trustee. *See Mishkin,* 744 F.Supp. at 557 ("In order to speed [customers'] recovery of their investments, SIPC was authorized to advance payments of the customer's net equity claim against the estate. In return, SIPC (*not a SIPC trustee*) becomes subrogated to such claims of customers against the estate." (emphasis added)). SIPA expressly provides that SIPC has the statutory right of subrogation. 15 U.S.C. § 78fff–3(a) ("To the extent moneys are advanced by SIPC to the trustee to pay or otherwise satisfy the claims of customers, in addition to all other rights it may have at law or in equity, SIPC shall be subrogated to the claims of such customers with the rights and priorities provided in this chapter . . . ."); *id.* § 78fff–4(c) ("To the extent moneys of SIPC are used to satisfy the claims of customers, in addition to all other rights it may have at law or in equity, SIPC shall be subrogated to the claims of such customers against the member."). Under the principle of statutory construction *expressio unius est exclusio alterius,* the express provision for SIPC's right of subrogation compels the conclusion that a SIPC trustee does not enjoy a similar right. This conclusion is reinforced by the fact that, in defining a trustee's powers and duties, SIPA does not refer to a trustee's right of subrogation. *See* 15 U.S.C. § 78fff–1(a), (b).

■ Second, the Trustee argues that, even if SIPA does not explicitly grant him the subrogation rights claimed, he nonetheless has a common-law right of subrogation. He asserts that the principles of equity afford him the opportunity to pursue claims against defendants who are liable for the losses for which he has paid customers. The Court finds this argument to be equally without merit. Equity of subrogation is defined as "[t]he right of a person who is secondarily liable on a debt, and who pays the debt, to personally enforce any right that the original creditor could have pursued against the debtor." Black's Law Dictionary 561 (7th ed.1999). It is evident that SIPC is secondarily liable to customers for their net equity claims against an insolvent broker-dealer. SIPA provides that SIPC has the obligation to make advances to a trustee in order to satisfy customer claims for the amount by which the net equity of each customer exceeds his ratable share of customer property. 15 U.S.C. § 78fff–3(a). The duties of a SIPC trustee—i.e., those specified by SIPA in addition to those enumerated under Chapter 7 of the Bankruptcy Code, *see id.* § 78fff–1(b)—further indicate that the Trustee does not have any common-law right of equitable subrogation with respect to the customers' net equity claims. Under Code § 704, it is a trustee's duty to "collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest." 11 U.S.C. § 704 (2000). Nothing in SIPA or the Bankruptcy Code states, or even suggests, that a SIPC trustee would be liable

securities at fixed prices in their A.R. Baron accounts. Accordingly, the Court need not consider whether the Trustee may maintain the antitrust action on behalf of the customers in his capacity either as equitable subrogee or as bailee.

to customers if there were insufficient assets to satisfy their net equity claims. It is under its obligation pursuant to SIPA that SIPC has paid the customers' net equity claims by advancing funds to the Trustee, who in turn has marshaled and distributed those funds. It stands to reason that, consistent with the Second Circuit's decision in *Redington v. Touche Ross & Co.*, 592 F.2d 617 (2d Cir.1978), *rev'd on other grounds*, 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979), it is SIPC who has a "general common-law right of equitable subrogation," *id.* at 624, not the Trustee. The Court holds that the Trustee does not have standing as an equitable subrogee of the customers whose net equity claims have been satisfied.

### 3. *Trustee's Standing as Bailee of the Customer Property*

 The Trustee argues that his status as bailee of the fund of customer property provides him standing to pursue claims on behalf of A.R. Baron's customers. Under the Second Circuit's decision in *Redington*, a SIPC trustee may maintain an action as bailee on behalf of customers of an insolvent broker-dealer who have not been fully reimbursed by SIPC. *Redington*, 592 F.2d at 626; *see also SIPC*, 49 F.Supp.2d at 654 ("I am bound by *Redington* to hold that the Trustee can bring suit as bailee."). To the extent that a customer's net equity claim exceeds his ratable share of customer property, SIPC will advance a trustee up to $500,000 to satisfy a clam for securities and up to $100,000 to satisfy a claim for cash. 15 U.S.C. § 78fff–3(a). *Redington* therefore permits a trustee in his capacity as bailee to pursue a customer claim against those who caused the customer's losses only when the advances by SIPC have been insufficient to satisfy the customer's net equity claim. *See Redington*, 592 F.2d at 625 (stating):

> To the extent that customers have claims that have not been satisfied either by [the debtor] in liquidation or by SIPC, they retain rights of action against [the third-party defendant]. We hold that the Trustee, as bailee, is an appropriate real party in interest to maintain this action on their behalf.

(cross-reference omitted).

Even though a SIPC trustee has standing to sue as bailee of the fund of customer property entrusted to a failed securities brokerage firm, the Trustee has not stated a claim under which relief may be granted. Not only does the amended complaint fail to assert that the Trustee has brought claims on behalf of customers that have not been fully reimbursed by SIPC, it also fails to set forth any allegations with respect to the payment of customer claims. In a brief submitted to the Court, the Trustee merely states that his status as bailee entitles him to assert claims for losses of customer property, without identifying whether those losses are uncompensated. The Court holds that the general reference to customer losses is insufficient to grant the Trustee standing as bailee to assert the claims in the amended complaint as it currently exists.

### CONCLUSION

For the reasons set forth above, the defendants' motion is granted.[4]

SETTLE ORDER.

---

**4.** Because the Court has determined that the Trustee lacks standing to assert claims on

behalf of both A.R. Baron and its customers, the Court need not address any of the other issues raised by the parties in their briefs in order to dispose of the motion to dismiss.