In re: **PARK SOUTH SECURITIES, LLC, Debtor.**

**Irving H. Picard, Trustee for the Liquidation of Park South Securities, LLC, Plaintiff,**

v.

**Laurance Taylor and Patricia Taylor Defendants.**

No. 03–8024RDD.
Adv. No. 04–4272RDD.

United States Bankruptcy Court, S.D. New York.

April 8, 2005.

Paduano & Weintraub, LLP, New York City, by Leonard Weintraub, for the Defendants.

Gibbons, Del Deo, Dolan, Griffinger & Vecchione, Newark, NJ, by Gerlandine E. Ponto, for the SIPA Trustee.

Trustee for Park South Securities, by Irving H. Picard.

Securities Investor Protection Corporation, by Kevin H. Bell.

### MEMORANDUM OPINION AND ORDER ON DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

ROBERT D. DRAIN, Bankruptcy Judge.

In his complaint in this adversary proceeding (the "Complaint"), Irving H. Picard, as trustee (the "Trustee") under the Securities Investor Protection Act ("SIPA"), 15 U.S.C. §§ 78aaa *et seq.* ("SIPA"), for Park South Securities, LLC ("Park South" or the "Debtor"), seeks under various fraudulent transfer statutes, as well as on the basis of unjust enrichment, to avoid and recover transfers made to the defendants, Laurance and Patricia Taylor (the "Defendants" or the "Taylors"). The Defendants have moved to dismiss the Complaint under Fed.R.Civ.P. 9(b), 12(b)(1) and 12(b)(6), made applicable to this adversary proceeding by Bankruptcy Rules 7009 and 7012, for the following reasons: (1) the Trustee does not have

standing, at least in the absence of the Securities Investor Protection Corporation ("SIPC") as a co-plaintiff, and, therefore, this Court lacks subject matter jurisdiction; (2) the transferred assets were not property of the Debtor's estate and, therefore, are not the proper subject of a fraudulent transfer claim; (3) Park South's complicity in the transfers bars the Trustee's claims under the Second Circuit's *Wagoner* Rule, or the *in pari delicto* doctrine; and (4) the Trustee has not pled his fraud claims with the particularity required by Rule 9(b).

The Trustee and SIPC argue in response that the Trustee has direct authority to avoid the transfers under 15 U.S.C. §§ 78fff–1(a) and 78fff–2(c)(3) and 11 U.S.C. §§ 544 and 548(a). For the same reason, they contend that the *Wagoner* Rule is not implicated. In addition, they argue that the Trustee has standing either (a) because Park South's customers assigned their claims against the Defendants to him when the customers' claims against Park South were paid by SIPC, (b) because SIPC is statutorily subrogated to the claims of customers that SIPC has paid, and the Trustee can pursue those customers' state law unjust enrichment claims against the Taylors in furtherance of SIPA's broad remedial purpose, or (c) as a bailee of customer property. Finally, the Trustee and SIPC assert that the Trustee has pled his fraud claims with sufficient particularity to satisfy Fed. R.Civ.P. 9(b).

The Court issued a preliminary ruling at the hearing on the Defendants' motion on December 14, 2004. This memorandum opinion states in greater detail and with finality the Court's reasons for denying the Defendants' motion with the exception of dismissing the Trustee's unjust enrichment claim and his intentional fraudulent transfer claim under section 276 of the New York Debtor–Creditor Law (but granting the Trustee leave to re-plead on or before thirty days from the date hereof).

### Background

The facts are taken from the Trustee's Complaint. In the context of a motion to dismiss, which tests the legal sufficiency of the Complaint, not the weight of the evidence, the Complaint's factual allegations are accepted as true and all reasonable inferences drawn from them are viewed in the light most favorable to the Trustee. *Square D Co. v. Niagara Frontier Tariff Bureau, Inc.,* 476 U.S. 409, 411, 106 S.Ct. 1922, 90 L.Ed.2d 413 (1986). "The issue is not whether the a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *abrogated on other grounds,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).[1]

On February 5, 2003, the Securities and Exchange Commission filed a complaint in the United States District Court for the Southern District of New York against Park South and Todd Eberhard, Park South's principal, among others, alleging fraud and misappropriation of funds in connection with brokerage accounts under their control. Complaint ¶ 5.

Shortly thereafter, SIPC submitted an application to the District Court to liquidate Park South under SIPA, and the SEC consented to the consolidation of its action with SIPC's. *Id.* ¶ 6. Park South's liqui-

---

1. The Court may also consider documents attached to the Complaint or incorporated in it by reference, matters of judicial notice, and documents in the Defendants' possession or knowledge. *Dangler v. N.Y. City Off Track Betting Corp.,* 193 F.3d 130, 138 (2d Cir. 1999); *Brass v. American Film Technologies, Inc.,* 987 F.2d 142, 150 (2d Cir.1993).

dation proceeding was then removed to this Court pursuant to 15 U.S.C. § 78eee(b)(4), and the Trustee, with SIPC's cooperation, has managed Park South's liquidation, including the recovery of customer property pursuant to 15 U.S.C. §§ 78fff(a)(3) and 78lll(4). *Id.* ¶ 7.

The Defendants had accounts at Park South. Through Park South's clearing agent, from December 2001 through January 2003 they received $238,000 from Park South in $17,000 monthly installments. *Id.* ¶ 20. The value of the Defendants' joint account with Park South was, however, $88,000 less than the sum of these periodic payments. *Id.* ¶¶ 21–22. From June 10, 2002 through January 24, 2003, within a year before this SIPA proceeding, Park South caused its clearing agent to make up that shortfall with four transfers to the Defendants in the aggregate amount of $88,000 (the "Transfers"). *Id.* ¶¶ 22–26. Park South caused each Transfer to be made from the account of another customer without such customer's consent. *Id.* The Park South customers from whose accounts the funds were transferred to the Defendants eventually filed claims for customer protection in this SIPA proceeding in the amount of the Transfers. *Id.* ¶ 28.

Not all customer claims under 15 U.S.C. § 78fff–2(c)(1)(A)–(D) and SIPC's claim for reimbursement for cash advances under 15 U.S.C. § 78fff(3)(a)(1) will be satisfied in this proceeding by the "customer fund" under SIPA. *Id.* ¶ 30. On the other hand, as a result of the Transfers, the Defendants received more than their maximum

net equity, as defined in 15 U.S.C. § 78lll(11).[2] *Id.* ¶ 37.

*Discussion*

I. *The Trustee's Standing.*

Defendants move to dismiss the Complaint under Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction, on the basis that the Trustee lacks standing. (It is otherwise clear that this Court has jurisdiction under 15 U.S.C. §§ 78eee(b)(2)(A) and (b)(4) and the District Court's order dated February 10, 2003 referring the Debtor's case to this Court, and that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A)).

"Whether a claimant has standing is the threshold question in every federal case, determining the power of the court to entertain the suit." *Leasing by Paolo v. Sinatra (In re Gucci)*, 126 F.3d 380, 387–88 (2d Cir.1997) (quoting *Warth v. Seldin*, 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)). A plaintiff's standing depends, first, on whether the plaintiff has made out a "case or controversy" between the plaintiff and the defendant within the meaning of Article III § 2 cl. 1 of the Constitution, *see Warth v. Seldin*, 422 U.S. at 498–499, 95 S.Ct. 2197, that is, whether the plaintiff can show that it has personally suffered an "injury in fact," or a "distinct and palpable injury." *Ass'n of Data Processing Serv. Orgs. v. Camp*, 397 U.S. 150, 152, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970); *Valley Forge Christian College v. Americans United for Sep-*

**2.** The Defendants nevertheless filed claims for "customer protection" under SIPA. These claims were based, however, not on the difference between the Defendants' "net equity" under SIPA and the liquidation value of their brokerage accounts on the filing date but, rather, on the decline in the value of their accounts while they entrusted Park South with the management of their investments. For that reason, the Court upheld the Trustee's denial of customer protection for these claims, *see, e.g., In re Hanover Square Securities*, 55 B.R. 235, 238 (Bankr.S.D.N.Y.1985), which is a different thing, of course, from denying that the Taylors may have some other form of claim attributable to misconduct of Park South and Eberhard.

*aration of Church and State*, 454 U.S. 464, 472, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982). More specifically, to have standing the Trustee must "[1] allege a personal injury [2] fairly traceable to the defendant's allegedly unlawful conduct and [3] likely to be redressed by the requested relief." *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1091 (2d Cir.1995).

Here, the "case or controversy" requirement is easily satisfied with respect to twelve of the thirteen claims asserted in the Complaint, because those claims seek to avoid the Transfers as either constructively or intentionally fraudulent under sections 544(b) (which incorporates applicable state fraudulent transfer law) or 548(a) of the Bankruptcy Code and to recover the proceeds or the value thereof for the benefit of the Debtor's estate and creditors under section 550 of the Bankruptcy Code. Complaint ¶¶ 41–88. The Trustee's standing to pursue the final claim, which seeks to recover the Transfers under 11 U.S.C. § 105(a) on an unjust enrichment theory, *id.* ¶¶ 85–88, is more problematic, however.

### A. *The Trustee's Fraudulent Transfer Claims.*

■ Sections 544 and 548(a) of the Bankruptcy Code give a trustee (and through 15 U.S.C. § 78fff–1(a), the Trustee)[3] standing to avoid fraudulent transfers. Apparently not disputing this proposition, the Defendants note, though, that section 544 enables a trustee to avoid and recover only a "transfer of property *of the debtor,*" 11 U.S.C. § 544(a), or "of an interest *of the debtor* in property," *id.* § 544(b) (emphasis added), and that section 548(a)

similarly limits the trustee to causes of action to avoid transfers of "an interest *of the debtor.*" 11 U.S.C. § 548(a) (emphasis added). Because the Transfers were made from customers' accounts, rather than from Park South's own funds, the Defendants contend, therefore, that the Trustee does not have standing to pursue his twelve fraudulent transfer claims.

SIPA, however, specifically defines the Debtor's "interests in property" to include property that was previously transferred from a customer's account. Thus, 15 U.S.C. § 78fff–2(c)(3) provides:

> Whenever customer property is not sufficient to pay in full the claims set forth in subparagraphs (A) through (D) of paragraph (1), the trustee may recover any property transferred by the debtor which, except for such transfer, would have been customer property if and to the extent that such transfer is voidable or void under the provisions of Title 11. Such recovered property shall be treated as customer property. For purposes of such recovery, *the property so transferred shall be deemed to have been the property of the debtor* and, if such transfer was made to a customer or for his benefit, such customer shall be deemed to have been a creditor, the laws of any State to the contrary notwithstanding.

15 U.S.C. § 78fff–2(c)(3) (emphasis added). *See also, SEC v. Albert & Maguire Sec. Co.*, 560 F.2d 569, 574 (3d Cir.1977); *Hill v. Spencer S & L Ass'n (In re Bevill, Bresler & Schulman, Inc.)*, 94 B.R. 817, 825–26 (D.N.J.1989) (15 U.S.C. § 78fff–2(c)(3) creates a legal fiction by deeming customer property to be property of the

---

**3.** 15 U.S.C. § 78fff–1(a) provides that a "[SIPA] trustee shall be vested with the same powers and title with respect to the debtor and property of the debtor, including the same right to avoid preferences, as a trustee in a case under Title 11." *See also Mishkin v.*

*Ensminger (In re Adler Coleman Clearing Corp.)*, 218 B.R. 689, 702 (Bankr.S.D.N.Y. 1998) (SIPA trustee may bring fraudulent transfer claims under sections 544 and 548 of the Bankruptcy Code, among other remedies).

debtor, relieving the trustee from having to prove that the property belonged to the debtor's estate).

The Defendants' reliance on *White Family Cos. v. Dayton Title Agency, Inc.*, 284 B.R. 238 (S.D.Ohio 2002), and *Daly v. Kennedy* (*In re Kennedy*), 279 B.R. 455 (Bankr.D.Conn.2002), is misplaced, therefore, because those cases involved chapter 7 trustees, not a SIPA trustee with the benefit of 15 U.S.C. § 78fff–2(c)(3). *Trefny v. Bear Stearns Sec. Corp.*, 243 B.R. 300, 322, 323 (S.D.Tex.1999), also is inapposite, because the SIPA trustee in *Trefny* labeled his claims "fraudulent transfer" claims under 11 U.S.C. § 548 when, in fact, they were nothing more than common law fraud claims, *id.* at 323, based on alleged misrepresentations to third parties in connection with bond purchases. *Id.* at 322. In the present proceeding, on the other hand, the Trustee is pursuing fraudulent transfer causes of action specifically conferred on him by SIPA and the Bankruptcy Code, which, therefore, he clearly has standing to pursue. *See Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114, 118 (2d Cir.1991); *Giddens v. D.H. Blair & Co.* (*In re A.R. Baron & Co.*), 280 B.R. 794, 799 (Bankr.S.D.N.Y.2002) ("case or controversy" requirement imposed by Article III of the Constitution "coincides with the scope of the powers the Bankruptcy Code gives a trustee").

The Complaint alleges not only each of the requirements of sections 548(a) of the Bankruptcy Code and (except as noted in Section II below) the applicable New York State fraudulent conveyance provisions incorporated under section 544(b) of the Bankrputcy Code, but also each of the

requirements of 15 U.S.C. § 787fff–2(c)(3), including that the customers' property is insufficient to pay in full the types of claims set forth in 15 U.S.C. § 78fff–2(c)(1) (Complaint ¶¶ 23–30). Therefore, in the light of 15 U.S.C. § 78fff–2(c)(3)'s definition of "property of the debtor," and the rights conferred on the Trustee by that section, 15 U.S.C. § 78fff–1(a) and 11 U.S.C. §§ 544 and 548(a), the Trustee has standing to bring his twelve fraudulent transfer causes of action.

 For the same reasons, the Defendants' invocation of the "*Wagoner* Rule" is unavailing as applied to the Trustee's fraudulent transfer causes of action.[4] The *Wagoner* Rule is less a single rule than a process for analyzing whether and under what circumstances a trustee has standing to pursue a prepetition cause of action or is precluded from doing so by either the nature of the claim or the debtor's prepetition conduct. The *Wagoner* Rule does not, however, apply to causes of action that the Bankruptcy Code specifically confers on a trustee or a debtor in possession. *See Tese–Milner v. Beeler* (*In re Hampton Hotel Investors, L.P.*), 289 B.R. 563, 580 (Bankr.S.D.N.Y.2003) ("The rights to avoid such transfers, and to recover them for the benefit of the estate, are expressly conferred by federal law on the trustee.... It would be turning the *Wagoner* Rule and concepts of *in pari delicto* on their heads to hold that the [t]rustee lacks standing to recover such payments.").

**B.** *The Trustee's Unjust Enrichment Claim.*

 Having based his unjust enrichment claim only on section 105(a) of

---

4. The only apparent basis for the Defendant's motion to dismiss the twelve fraudulent transfer claims under Rule 12(b)(6) also is the contention that the Transfers did not involve property of the Debtor. The same analysis of

SIPA sections 78fff–2(c)(3) and 78fff–1(a) and Bankruptcy Code sections 544 and 548, therefore, also requires denial of Defendants' Rule 12(b)(6) motion as applied to these claims.

the Bankruptcy Code, however, and not a provision such as Bankruptcy Code sections 544 or 548, the Trustee apparently views that claim simply as a prepetition cause of action belonging to the Debtor's estate.[5] In such circumstances, nonbankruptcy law determines whether such a claim actually belongs to the estate or only to individual creditors. *See generally, In re Hampton Hotel Investors*, 289 B.R. at 573. The first part of the *Wagoner* Rule analysis provides that, absent another basis for standing, the Trustee may not pursue a claim on the estate's behalf if it is particular only to certain creditors. *Id.* at 574, quoting *Wagoner*, 944 F.2d at 118. *See also Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1093 ("[W]hen creditors ... have a claim for injury that is particularized as to them, they are exclusively entitled to pursue that claim, and the bankruptcy trustee is precluded from doing so.").

■ The Complaint alleges that the Taylors were unjustly enriched at the expense not of the Debtor but, rather, of the particular customers whose accounts the Transfers depleted. Complaint ¶ 91. Thus, absent another basis for standing, under the first prong of the *Wagoner* Rule the Trustee lacks standing to pursue his unjust enrichment cause of action. *Hirsch*, 72 F.3d at 1093; *see also In re A.R. Baron & Co.*, 280 B.R. 794, 798–800 (dismissing SIPA trustee's unjust enrichment claim for lack of standing).[6]

■ It should be noted, however, that section 544 of the Bankruptcy Code is not limited to the avoidance of fraudulent transfers. Rather, it gives a trustee statutory standing to avoid transfers on any grounds that could be asserted by a hypothetical lien or execution creditor (or a bona fide purchaser of real property), 11 U.S.C. § 544(a), or by an unsecured prepetition creditor. 11 U.S.C. § 544(b). Conceivably, therefore, the Trustee could employ Bankruptcy Code section 544(b)(1), rather than section 105(a) to bring an unjust enrichment claim under state law to the extent of any transfer of property of Park South to the Defendants. *See Kittay v. Flutie N.Y. Corp. (In re Flutie N.Y.*

---

**5.** Bankruptcy Code section 105(a) gives the bankruptcy courts the power to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a); *New England Dairies, Inc. v. Dairy Mart Convenience Stores, Inc. (In re Dairy Mart Convenience Stores, Inc).*, 351 F.3d 86, 91–92 (2d Cir.2003). Thus section 105(a) gives the Court power to act in furtherance of its jurisdiction, *id.; Feld v. Zale Corp. (In re Zale Corp.)*, 62 F.3d 746, 760 (5th Cir.1995), but not to expand that jurisdiction. *Id.* That is, section 105(a) does not allow a bankruptcy court to create substantive rights otherwise unavailable under applicable law, or constitute a roving commission to do equity. *Id.*

Although there is very little case law discussing whether section 105(a) can serve as a basis for a claim of unjust enrichment (*see, e.g., Bessette v. Avco Fin. Sers.*, 230 F.3d 439, 447 (1st Cir.2000); *Home Sav. of America, F.A. v. Inland Group, Inc.*, 1991 WL 270423, *4 (N.D.Ill.1991))* (unjust enrichment claim

not recognized where trustee had available remedy under a specific provision of the Bankruptcy Code, 11 U.S.C. § 544(b)(1)), it appears best, therefore, not to view section 105(a) as an independent ground for the Trustee's unjust enrichment claim, but, rather, to ask whether the Debtor, and thus the Trustee, has an unjust enrichment claim under applicable nonbankruptcy law that is property of the estate under section 541 of the Bankruptcy Code or whether the Trustee has some other basis to pursue such a claim.

**6.** Given this infirmity, it is not necessary to reach the second level of inquiry under the *Wagoner* Rule: whether, even if the cause of action belongs to the debtor's estate, the debtor was fatally complicit in the wrongdoing allegedly perpetrated by the third-party defendant, or whether the Rule's exceptions to the *in pari delicto* doctrine apply. *See generally In re A.R. Baron & Co.*, 280 B.R. at 800–802.

*Corp.*), 310 B.R. 31, 58–59 (Bankr.S.D.N.Y. 2004); *Wedtech Corp. v. Biaggi & Ehrlich (In re Wedtech Corp.*), 137 B.R. 575, 577, 582 (Bankr.S.D.N.Y.1992). As noted above, given such statutory standing, such a claim would not be subject to any aspect of the *Wagoner* Rule.

Moreover, the Trustee does assert other alternative bases for standing to bring his unjust enrichment claim: that the wronged customers assigned their claims against the Defendants to him, that he can pursue such claims on behalf of SIPC as a statutory and common law subrogee, and that he can pursue them as a bailee of customer property, including the accounts depleted by the Transfers. Each of these bases is considered below.

### 1. *Standing as Assignee.*

■ Although the issue is not free from doubt, the Trustee does not have standing as a contractual assignee of the injured customers. Granted, 15 U.S.C. § 78fff–2(b) authorizes a SIPA trustee to obtain assignments from customers whose claims he satisfies,[7] and granted, further, that the Trustee has alleged that the relevant customers, in return for the Trustee's payments to them of SIPC funds, assigned their claims against the Defendants to the Trustee (and SIPC). Complaint ¶ 31. Nevertheless, the Court agrees with the other cases from this District holding that the assignments authorized by section 78fff–2(b) of SIPA do not extend to all claims of customers against third parties

but, rather, only to a customer's net equity claim. *SIPC v. BDO Seidman LLP*, 49 F.Supp.2d 644, 654 n. 7 (S.D.N.Y.1999), *aff'd in part, question certified,* 222 F.3d 63 (2d Cir.2000), *aff'd,* 245 F.3d 174 (2d Cir.2001); *Mishkin v. Peat, Marwick, Mitchell & Co.,* 744 F.Supp. 531, 554 (S.D.N.Y.1990); *In re A.R. Baron & Co.,* 280 B.R. 794, 803–804; *see also Logan v. Becker (In re Inner City Mgt., Inc.*), 304 B.R. 250, 254 (Bankr.D.Md.2003). *Cf. SEC v. Albert & Maguire Sec. Co.,* 560 F.2d 569, 574 (3rd Cir.1977) ("If a customer entitled to a share in the fund has a cause of action against a third party for the same property, the trustee should be entitled to take an assignment of the claim in order to avoid an unnecessary drain on the fund.").

### 2. *Standing as Subrogee.*

■ The parties apparently do not dispute that *SIPC*, having advanced millions of dollars to pay customer claims in this proceeding, is subrogated to the rights of those customers, including the rights of customers to bring claims against third parties. 15 U.S.C. § 78fff–3(a);[8] *Redington v. Touche Ross & Co.,* 592 F.2d 617, 624 (2d Cir.1978), *rev'd on other grounds,* 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979); *Appleton v. First Nat'l Bank of Ohio,* 62 F.3d 791, 799–800 (6th Cir.1995). *See also SIPC v. BDO Seidman LLP,* 222 F.3d 63, 69 (2d Cir.2000) (assuming, without deciding, on the basis of *Redington,* that SIPC would have standing as a subrogee). *But see SIPC v. BDO* Seidman, 49

---

**7.** "Any payment or delivery of property pursuant to this subsection may be conditioned upon the trustee requiring claimants to execute . . . appropriate receipts, supporting affidavits, releases, and assignments. . . ." 15 U.S.C. § 78fff–2(b).

**8.** Section 78fff–3(a) of SIPA states,
To the extent moneys are advanced by SIPC to the trustee to pay or otherwise satisfy the

claims of customers, in addition to all other rights it may have at law or in equity, SIPC shall be subrogated to the claims of such customers with the rights and priorities provided in [SIPA], except that SIPC as subrogee may assert no claim against customer property until after the allocation thereof to customers as provided in section 78fff–2(c) of this title.

F.Supp.2d 644, 653 (questioning *Redington's* rationale for SIPC's ability, as a subrogee, to pursue its subrogor's claims against third parties). In any event, this Court is bound by *Redington.*

Defendants argue, however, that SIPA does not give the *Trustee* rights of subrogration, either directly or indirectly as SIPC's representative, and the only plaintiff in this proceeding is the Trustee, not SIPC (although, as noted, SIPC strongly supports the Trustee's pursuit of this proceeding against the Taylors). A similar argument persuaded the District Court in *Mishkin* that a SIPA trustee, standing alone, did not have any subrogation claims to enforce. 744 F.Supp. 531, 557 ("SIPC (not a SIPC trustee) becomes subrogated to such claims [that it has paid] of customers"). *See also In re A.R. Baron & Co.,* 280 B.R. 794, 804–805 (because SIPA does not specifically confer any subrogation claims on a SIPC trustee, and the trustee is not secondarily liable on the debt (as is SIPC), a SIPC trustee has neither statutory nor common law subrogation rights).

In response, the Trustee and SIPC point to several decisions for the general proposition that the Trustee may enforce SIPC's rights as a subrogee. *See, e.g., SIPC v. Barbour,* 421 U.S. 412, 417, 95 S.Ct. 1733, 44 L.Ed.2d 263 (1975) ("The trustee is empowered and directed by [SIPA] to . . . enforce rights of subrogation . . ."); *Appleton v. First Nat'l Bank,* 62 F.3d at 800–801; *SIPC v. Vigman,* 803 F.2d 1513, 1516 (9th Cir.1986) ("Under SIPA, a trustee may be appointed to . . . enforce rights of

subrogration . . ."); *Handelman v. Weiss,* 368 F.Supp. 258, 261 (S.D.N.Y.1973). The Trustee and SIPC also rely on section 78fff(a)(3) of SIPA, which provides that a purpose of a SIPA proceeding is "to enforce rights of subrogation as provided in this chapter." 15 U.S.C. § 78fff(a)(3). However, on closer reading, these authorities do not ultimately establish that the Trustee has the right to pursue SIPC's claims as a subrogee.

Only one of the foregoing cases actually reached the issue of a SIPA trustee's standing to bring a claim as a subrogee. *Barbour* involved the unsuccessful attempt by customers to compel SIPC to exercise its rights, 421 U.S. at 414–415, 95 S.Ct. 1733, and the *Vigman* court focused on the extent of SIPC's subrogation rights; SIPC brought the claim, not the SIPA trustee. 803 F.2d at 1515. In *Handelman v. Weiss,* the issue was whether the SIPA trustee's former counsel should be disqualified in a separate action by customers. 368 F.Supp. at 263. Only *Appleton* actually involved whether the SIPA trustee had standing to bring a claim derived from subrogee status.[9] However, *Appleton* relied primarily on SIPA section 78fff-3(a) in concluding that the trustee had standing by subrogation, 62 F.3d at 800,[10] and, as the Defendants correctly point out, that provision expressly grants a right of subrogation only to SIPC, not a SIPA trustee. *See* 15 U.S.C. § 78fff-3(a). SIPA section 78fff(a)(3), moreover, does not provide that a SIPA trustee can enforce such rights on SIPC's behalf; that is, it states only that a

9. *See also Shields v. Newbridge Securities, Inc.* (*In re Lloyd Securities, Inc.*), 1992 WL 172379, 1992 Bankr.LEXIS 1033 (Bankr. E.D.Pa. July 13, 1992) (relying on dicta in *Redington,* 592 F.2d at 624–25 and *SEC v. Albert & Maguire Sec.,* 560 F.2d at 574).

10. *Appleton* also reasoned that a SIPA trustee has standing through subrogation because the

trustee distributes the SIPA fund to make creditors whole. 62 F.3d at 800. However, while a SIPA trustee has the duty to distribute the fund, the money and, thus, the subrogation claim are still SIPC's. SIPC, and not the trustee, therefore, should have the ability to decide how SIPC's subrogation rights are to be used.

purpose of a SIPA *proceeding* is to enforce such rights, that is, to provide a *forum* for the enforcement of such rights.

■ Thus, although SIPA should be interpreted broadly in furtherance of its remedial purpose, *Pinter v. Dahl,* 486 U.S. 622, 653, 108 S.Ct. 2063, 100 L.Ed.2d 658 (1988); *In re New Times Sec. Servs.,* 371 F.3d 68, 84 (2d Cir.2004), the Court concludes that the Trustee cannot bring his unjust enrichment claim on the basis of SIPC's subrogation rights, at least unless he pleads that SIPC has expressly conferred those rights on him. *See Mishkin,* 744 F.Supp. at 555–57; *In re A.R. Baron & Co.,* 280 B.R. at 803. Of course, this may be an easy fix, because in this proceeding (although not necessarily in every SIPC proceeding), the Trustee and SIPC are aligned.

### 3. *Standing as Bailee.*

■ The parties do not dispute that under the law of this Circuit the Trustee has standing to assert customers' claims against third parties as deemed bailee of customer property. *See Redington,* 592 F.2d at 624–25; *SIPC v. BDO Seidman,* 49 F.Supp.2d at 654 (following *Redington,* although questioning its rationale); *In re A.R. Baron & Co.,* 280 B.R. at 805. *See also SIPC v. BDO Seidman,* 222 F.3d at 71 (assuming, without deciding, on the basis of *Redington,* that SIPA trustee would have standing as bailee). The Defendants contend, however, that the Trustee has not asserted the prerequisite for such standing, which is that SIPC has not fully satisfied the relevant customers. *See Redington,* 592 F.2d at 624 (holding that a trustee may bring a claim against a third party on behalf of such customers as have not been fully reimbursed by SIPC). Although paragraphs 30 and 36 of the Complaint could be read, contrary to the Defendants' argument, to allege that the relevant cus-

tomers have not been fully reimbursed by SIPC, the Complaint is better read to allege no more than that SIPC, not the customers with claims against the Taylors, will be left with a shortfall. Therefore, without a clearer allegation in the Complaint of *Redington*'s requirement for his qualification as a bailee, the Trustee lacks standing to assert the unjust enrichment claim in that capacity.

### II. *Intentionally Fraudulent Transfers Pled with Sufficient Particularity.*

■ Section 548(a)(1)(A) of the Bankruptcy Code and section 276 of the New York Debtor–Creditor Law, incorporated by Bankruptcy Code section 544(b), provide that a trustee may avoid transfers of an interest of the debtor in property made with actual intent to hinder, delay, or defraud creditors. The "intent" that must be established under section 548(a) is the *debtor's* actual fraudulent intent; under section 276 of the N.Y. D.C.L., however, the Trustee must establish both the debtor's *and* the transferee's actual fraudulent intent. *Manhattan Inv. Fund, Ltd. v. Bear Stearns Sec. (In re Manhattan Inv. Fund, Ltd.),* 310 B.R. 500, 505, 508 (Bankr. S.D.N.Y.2002). The Defendants argue that the Trustee's intentional fraudulent transfer claims are insufficient because they do not satisfy the particularity requirements of Rule 9(b) of the of the Federal Rules of Civil Procedure as made applicable by Bankruptcy Rule 7009(b).

■ Rule 7009(b) requires that all allegations of actual fraud in a complaint be pled with particularity. *In re Manhattan Inv. Fund,* 310 B.R. at 505. Allegations of actual fraud may not be made upon information and belief unless the facts at issue are within the defendant's knowledge. *Id.* However, courts take a liberal approach when construing allega-

tions of actual fraud when pled by a bankruptcy trustee, because a trustee is an outsider to the transaction who must plead fraud from second-hand knowledge. *Id.* Consequently, courts will accept allegations of circumstantial evidence to establish fraudulent intent, including well established "badges of fraud."[11] *Id.* Generally, the presence of a single badge of fraud is insufficient to establish actual fraudulent intent; however, "the confluence of several can constitute conclusive evidence of an actual intent to defraud, absent 'significantly clear' evidence of a legitimate supervening purpose." *Max Sugarman Funeral Home, Inc. v. A.D.B. Investors,* 926 F.2d 1248, 1254–55 (1st Cir.1991).

The Complaint states that the SEC filed a complaint against Debtor, among others, for fraud and misappropriation of funds. Complaint ¶ 5. The District Court action was transferred to the Bankruptcy Court because of Park South's insolvency and its inability to pay its obligations as they came due. *Id.* ¶ 6. In addition, the Debtor caused the transfer of funds from specified customer accounts to the Defendants' accounts, each of which were under its control, without the customers' consent, to satisfy an undertaking by Park South to the Defendants. *Id.* ¶¶ 23–26. The unauthorized transfers resulted in claims by the customers whose accounts were depleted against the Debtor in the amount of the transfers. *Id.* ¶ 28. Moreover, the Court takes judicial notice of the fact that the Debtor's principal and other members of management have been convicted of fraud and wrongdoing pertaining to their handling of customers' accounts.

In the light of the foregoing, the Trustee has pled the Debtor's fraudulent intent with sufficient particularity to satisfy Rule 9(b) with regard to his claim under section 548(a)(1)(A) of the Bankruptcy Code. *In re Manhattan Inv. Fund,* 310 B.R. at 511. He has not, however, made any allegation as to the Taylor's actual fraudulent intent and, therefore, has not pled with requisite particularity his cause of action under section 276 of the N.Y. D.C.L. *Id.* at 508.

### Conclusion

For the foregoing reasons, the Defendants' motion to dismiss the Trustee's fraudulent conveyance claims, with the exception of the claim under section 276 of the N.Y. D.C.L, is DENIED, and the Defendants' motion to dismiss the Trustee's unjust enrichment claim and the Trustee's claim under section 276 of the N.Y. D.C.L. is GRANTED; provided, that the Trustee shall have thirty days from the entry of this order to amend the Complaint in conformity with this memorandum opinion and order as to such dismissed claims.

It is SO ORDERED.

---

**11.** Such factors include (1) a close relationship among the parties to the transaction; (2) a secret and hasty transfer not in the usual course of business; (3) inadequacy of consideration; (4) the transferor's knowledge of the creditor's claim and the transferor's inability to pay it; (5) the use of dummies or fictitious parties; and (6) retention of control of property by the transferor after the conveyance. *Manhattan Inv. Fund,* 310 B.R. at 505 n. 3. It should·be noted that other bankruptcy courts consider additional factors such as: (1) the debtor absconded; (2) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred; (3) the transfer occurred shortly before or shortly after a substantial debt was incurred; and (4) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor. *In re Brantz,* 106 B.R. 62, 67 (Bankr. E.D.Pa.1989), *overruled on other grounds, In re Menell,* 37 F.3d 113 (3d Cir.1994).